**In the Interest of J.I.T.P.**

No. 14–02–00389–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 27, 2003.

Brian J. Fischer, William B. Connolly, Houston, for appellant.

Sandra D. Hachem, Houston, for appellee.

Panel consists of Justices ANDERSON, SEYMORE and GUZMAN.

## OPINION

CHARLES W. SEYMORE, Justice.

Heather T. and Tim P., the parents of J.I.T.P., appeal the termination of their parental rights in four issues, contending the evidence was legally and factually insufficient to terminate their parental rights; the evidence was legally and factually insufficient to prove such termination was in J.I.T.P.'s best interest; and the trial court's failure to file findings of fact and conclusions of law requires reversal. We affirm.

### BACKGROUND

Heather gave birth to J.I.T.P., a boy, on November 23, 2000. On January 26, 2001, the Texas Department of Protective and Regulatory Services (the Department) removed J.I.T.P. from his parents' custody and placed him in foster care. Initially, the Department established a service plan to reunify the family. However, when Heather and Tim failed to complete the services and maintain a stable home and employment, the Department sought to terminate their parental rights. Trial was held in March 2002, when J.I.T.P. was sixteen months old. In its judgment, the trial court found that the parents had engaged in conduct or knowingly placed J.I.T.P. with persons who engaged in conduct which endangered him. Further, the trial court found that termination of parental rights was in the J.I.T.P.'s best interest.

### STANDARD OF REVIEW

A parent's parental rights can be involuntarily terminated only by a showing of clear and convincing evidence, not just a preponderance of the evidence. *In re G.M.*, 596 S.W.2d 846, 847 (Tex.1980); *Robinson v. Dep't of Protective & Regulatory Servs.*, 89 S.W.3d 679, 685 (Tex.App.-Houston [1st Dist.] 2002, no pet.). Clear and convincing evidence is the degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be proved. TEX. FAM.CODE ANN. § 101.007 (Vernon 2002); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex.2002).

When reviewing legal sufficiency of the evidence, we look at all the evidence in the light most favorable to the finding to determine whether the fact finder could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 265 (Tex.2002). To appropri-

ately defer to the fact finder's conclusions, we must assume that the fact finder resolved disputed facts in favor of its finding, if a reasonable fact finder could do so. *Id.* We disregard all evidence that a reasonable fact finder could have disbelieved or found to have been incredible. *Id.*

■ When reviewing factual sufficiency of the evidence, we determine whether the fact finder could reasonably form a firm belief or conviction based on the evidence about the truth of the State's allegations. *Id.* "We consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding." *In re U.P.*, No. 14–02–00126–CV, slip op. at 8, 2003 WL 152346, at * 5 (Tex.App.-Houston [14th Dist.] Jan. 23, 2003, no pet. h.). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d, at 266.

### DISCUSSION

To terminate parental rights, a trial court must find by clear and convincing evidence that (1) termination is in the child's best interest and (2) the parent committed one or more of the acts specifically named in the Family Code as grounds for termination. TEX. FAM.CODE ANN. § 161.001 (Vernon 2002). In this case, the trial court found that termination was in J.I.T.P.'s best interest and that the parents "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM.CODE ANN. § 161.001(1)(E).

### A. Termination of Parental Rights under Section 161.001(1)(E)

■ In their first and second issues, Heather and Tim contend there is legally and factually insufficient evidence that they endangered J.I.T.P. and failed to comply with court-ordered service plans for J.I.T.P.'s reunification with them.

■ "Endanger," under section 161.001(1)(E), means to jeopardize or expose the child to loss or injury. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987). Endangerment can be exhibited through actions and omissions. *See Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex.1990); *In re D.T.*, 34 S.W.3d 625, 634 (Tex.App.-Fort Worth 2000, pet. denied). Further, the endangering acts need not be directed at or cause actual injury to the child. *In re W.A.B.*, 979 S.W.2d 804, 807 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). Acts of endangerment may precede the child's birth. *See In re M.D.S.*, 1 S.W.3d 190, 198–99 (Tex.App.-Amarillo 1999, no pet.).

The Department argues that the trial court's endangerment finding is primarily supported by evidence of family violence. The testimony at trial revealed that J.I.T.P.'s parents had a history of violence in their three-year relationship. When J.I.T.P. was a newborn, Tim accidentally hit him during a fight with Heather. At trial, Heather agreed that such behavior endangers a child. Additionally, although both parents testified that the fighting between them had lessened or abated since the Department removed J.I.T.P. from their care, their last physical altercation took place just a few weeks before trial. Tim "backhanded" Heather in the face, and she retaliated by scratching him across his face. Because her mouth was "busted" and she was four months pregnant, Heather went to the emergency room by ambulance. Later in her testimo-

ny, Heather admitted that she and Tim were still fighting, but the domestic violence was no longer as bad as it had been in the past. Both parents stated they were working on resolving disagreements without violence. Tim testified that he and Heather fought eight or nine times in the last year. He admitted in his testimony that it is not in a child's best interest to live with caregivers who hurt each other, unless the caregivers can "get it worked out." Further, both parents were asked to attend anger management classes, but neither complied. Tim testified that three months before trial (almost a year after J.I.T.P. was removed from their custody), he reapplied for classes, but no one returned his call.

A parent's abusive or violent conduct can produce a home environment that endangers a child's well-being. *In re B.R.*, 822 S.W.2d 103, 106 (Tex.App.-Tyler 1991, writ denied). Domestic violence, want of self control, and propensity for violence may be considered as evidence of endangerment. *See In re B.J.B.*, 546 S.W.2d 674, 677 (Tex.App.-Texarkana 1977, writ ref'd n.r.e.) (considering father's lack of self control and violent propensities); *see also Sylvia M. v. Dallas County Welfare Unit*, 771 S.W.2d 198, 204 (Tex.App.-Dallas 1989, no writ) (considering "volatile and chaotic" marriage, altercation during pregnancy, and mother's repeated reconciliation with abusive spouse). Thus, the trial court could have considered the domestic violence, especially the blow that hit J.I.T.P. and the parents' altercation during Heather's pregnancy, as evidence of endangerment to J.I.T.P.

Additionally, the trial court could have considered Heather's mental state as endangering J.I.T.P.'s well-being. Heather testified that she has recurrent depression, borderline personality disorder, posttraumatic stress disorder, ADHD, and partial complex seizures. She relinquished parental rights to her first child four years earlier because she was suicidal, though she denied suicidal thoughts in the ensuing years. She testified, however, that her therapist wants to address issues carefully because he is scared she might hurt herself. She testified that she thought about hurting herself a few days before trial, and she explained that she wanted to physically hurt a body part so the pain in her heart would subside. Heather further testified that when she is with J.I.T.P., she does not think about hurting herself. She testified, "I haven't sliced or diced or anything in three or four years." Additionally, she compared her symptoms to those of Andrea Yates, a woman in a highly publicized case who killed her children. She then distinguished herself from Andrea Yates, "I don't believe in spanking kids, much less murdering them." Lastly, Heather testified that, until four months before trial, she was not compliant with her medications. She explained that failure to take her medications could result in her death. "[W]hen a parent's mental state allows [her] to engage in conduct which endangers the physical or emotional well-being of the child, that conduct has bearing on the advisability of terminating the parent's rights." *In re C.D.*, 664 S.W.2d 851, 853 (Tex.App.-Fort Worth 1984, no writ) (considering mother's schizophrenia and resulting suicidal thoughts, hospitalizations, and violence). Thus, the trial court could have considered the mother's desire to hurt herself and her history of noncompliance with her medication schedule as factors endangering J.I.T.P.'s well-being.

After considering the entire record, we hold that there is legally and factually sufficient evidence to support a finding that J.I.T.P.'s parents engaged in conduct that endangered his physical or emotional well-being. Because there is sufficient evidence of endangerment, we need not address the parents' arguments regarding

their compliance with court-ordered service plans. *See* Tex. Fam.Code Ann. § 161.001(1) (violation of only one subsection is necessary; subsection E is endangerment, and subsection O is failure to comply with court orders necessary to obtain return of the child). Accordingly, we overrule parents' issues one and two.

## Best Interest of the Child

In their third issue, the parents contend there is legally and factually insufficient evidence that termination of their parental rights was in J.I.T.P.'s best interest.

There is a strong presumption that preserving the parent-child relationship is in the best interest of a child. *See* Tex. Fam.Code Ann. §§ 153.131(b), 153.191, & 153.252 (Vernon 2002). It is the Department's burden to rebut this presumption. *Hall v. Harris County Child Welfare Unit*, 533 S.W.2d 121, 122–23 (Tex. Civ.App.-Houston [14th Dist.] 1976, no writ). The Texas Supreme Court has compiled factors to consider when determining the best interest of a child. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include (1) the child's desires; (2) the child's emotional and physical needs now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, the Family Code lists thirteen similar factors for determining the parents' willingness and ability to provide a safe environment. Tex. Fam.Code Ann. § 263.307 (Vernon 2002).

In deciding J.I.T.P.'s best interest, the trial court could have considered the following: (1) physical and emotional danger to J.I.T.P.; (2) parental inabilities; (3) the parents' unwillingness to accept and complete counseling services; (4) the parents' unwillingness and inability to effect positive changes within a reasonable time; and (5) stability of the proposed homes for J.I.T.P.

First, the Department contends that physical and emotional danger to J.I.T.P. is the most prominent factor in this case, given the history of domestic violence between the parents. Such abuse is a factor under *Holley* and section 263.307(b)(7). The Department argues it is more difficult to protect a child when both parents are violent. It notes Heather's testimony that domestic violence has always been a part of her life and that she believes domestic violence is a personal matter, not the court's concern. The parents counter that J.I.T.P. was never the intended victim of their domestic violence. However, J.I.T.P. was hit by a misdirected blow during one fight. *See* Tex. Fam.Code Ann. § 263.307(b)(12)(E) (protection from repeated exposure to violence although violence may not be directed at the child). Further, the parents' fight shortly before trial, despite Heather's pregnancy, shows that they are mindless of their children's safety when angry with each other.

Second, the Department urges that neither parent has the ability to care for J.I.T.P. in a stable environment. *See Holley*, 544 S.W.2d at 372; Tex. Fam.Code Ann. § 263.307(b)(12). Heather still desires to hurt herself, has only recently complied with her medication schedule, and spent four days in a psychiatric hospital shortly before trial. Additionally, she admitted there was much she did not understand

about children. *See* TEX. FAM.CODE ANN. § 263.307(b)(12)(F) (an understanding of child's needs and capabilities). Further, neither parent has consistently maintained a safe physical home environment. *Id.* § 263.307(b)(12)(D). At the time of trial, Heather was living for two weeks with her parents. Tim moved to his parents' house the Friday before trial. Although Heather testified that she and J.I.T.P. would stay with her parents until "we found a place to go," Heather's parents are disinclined to assist with J.I.T.P. *See id.* § 263.307(b)(13) (whether extended family is available as support system). Since J.I.T.P. was removed from their custody, Heather and Tim have lived in at least five different places, including in a drug-infested trailer park and in a home the city condemned despite the parents' efforts to fix it. The Child Advocate testified that they also called her from various hotels, where they stayed for a night or two. In her opinion, there was no indication that either parent has ever had a stable home. Lastly, neither parent has worked consistently. In her most recent job, Heather worked as a waitress for only three days before she fainted with a threatened miscarriage. Previously, she had sporadically worked as a waitress or a school aide. Her main source of income is her Social Security check, on which she and Tim live. Tim recently began working as a security guard. Previously, he worked only odd-jobs, such as landscaping and painting.

Next, the trial court could have considered the parents' unwillingness to accept and complete counseling services and their unwillingness and inability to effect positive changes within a reasonable time. *See id.* § 263.307(b)(10)-(11); *see also Holley,* 544 S.W.2d at 372 (listing as a factor programs available to assist in the best interest of the child). The evidence reveals that the Department offered the parents drug assessments, psychological evaluations, anger management classes, parent-ing classes, and couples' counseling. In the fourteen months since J.I.T.P.'s removal, Heather and Tim completed only the drug assessments and psychological evaluations. Additionally, Heather was to undergo "intensive" therapy. Instead, she saw her therapist only three times, waiting until a trial date was set to begin such therapy. Heather refused to attend parenting classes arranged by the Department because she thought she did not need them. Shortly before trial, Heather began parenting/infant care classes at a local hospital in anticipation of her third child's birth. Tim testified that he originally started parenting classes, but "got kicked out" for missing them. The caseworker testified that Tim asked to enroll in such classes again after the trial date had been set. Because the parents failed to attend the first classes paid for by the Department, the caseworker told Tim they would need to pay for services on their own. The caseworker characterized Heather and Tim as uncooperative. Both parents admitted that though they were warned they might lose J.I.T.P. if they did not complete the services, they chose not to attend. The Child Advocate testified that she believed neither parent would change.

Fifth, the trial court could have considered the stability of the proposed homes in deciding J.I.T.P.'s best interest. *Holley,* 544 S.W.2d at 372. Heather had no definite plans for J.I.T.P., though she hoped her parents would help her care for him and eventually help pay tuition for a Christian school. Heather testified that she planned to leave for Oklahoma when trial ended. When asked his plans for J.I.T.P., Tim responded, "Getting another place to live and getting him whatever he needs." The evidence also showed that J.I.T.P. had been living with his fourth foster family for eight or nine months. He had his own room in their well-kept house. He regarded the foster parents and their sixteen-

year-old son as his family, and the Child Advocate testified that the foster parents interacted wonderfully with him. The foster mother testified that they wanted to adopt him.

The parents testified that they observed bruises on J.I.T.P. They believe the foster family abuses him. They further argue that no evidence was offered regarding several of the *Holley* factors, such as the child's desires and whether the parents could meet his physical and emotional needs. However, these factors are not exhaustive, nor is proof required on all nine to support the trial court's finding. *In re C.H.*, 89 S.W.3d 17, 27 (Tex.2002); *In re U.P.*, 2003 WL 152346, at *6. Additionally, the parents strongly protest that the Department refused to help them, failed to pay for services, and failed to visit them in their homes. However, the evidence shows that the Department did arrange and pay for such services, but the parents failed to attend. When the parents sought a second round of services after a trial date was set, the Department gave them information on where to find the classes. Further, the Child Advocate visited the home in which the parents resided for the longest amount of time; she found it unfit for a child.

Lastly, the parents contend that many of the factors in section 263.307 weighed in their favor or were not supported by any evidence. For instance, no evidence showed that sixteen-month-old J.I.T.P. had physical or emotional vulnerabilities; had been subject to another out-of-home placement; had been actually harmed by his parents; or was fearful of Heather and Tim. Heather and Tim argue that they were very willing to accept services, after initial reluctance, and to cooperate with the Department. They urge that no evidence shows they could not provide J.I.T.P. care, nutrition, guidance, and protection. We do not believe, however, that

the State must prove all thirteen factors in section 263.307 to determine the best interest of the child. *Cf. In re C.H.*, 89 S.W.3d at 27.

Further, in reviewing the trial court's decision for factual sufficiency, we have considered evidence of the parents' love of and desire to raise J.I.T.P. and their belated attempts to better their domestic violence and parenting abilities. Nonetheless, we hold that the trial court's determination of J.I.T.P.'s best interest is supported by clear and convincing proof that is legally and factually sufficient. Accordingly, we overrule issue three.

### Findings of Fact and Conclusions of Law

 In their final issue, the parents contend that the trial court reversibly erred in failing to file findings of fact and conclusions of law. If findings of fact and conclusions of law are properly requested, the trial court must prepare them. *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996); *see* Tex.R. Civ. P. 296. The trial court's failure to do so is presumed harmful unless the record affirmatively shows no harm resulted to the requesting party. *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex.1989).

 Because Tim failed to properly request findings and conclusions, he has waived this issue. *Curtis v. Comm'n for Lawyer Discipline*, 20 S.W.3d 227, 232 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (waiver on appeal due to failure to file notice of past due findings and conclusions). To determine whether Heather was harmed, we consider whether the failure to file findings and conclusions prevented her from properly presenting her case on appeal. *See Tenery*, 932 S.W.2d at 30. Harm may exist when the circumstances of a case require an appellant to guess the reason the court ruled as it did.

*Beard v. Beard,* 49 S.W.3d 40, 52 (Tex. App.-Waco 2001, pet. denied). Under the circumstances of this case, we hold that Heather has not been prevented from properly presenting her case on appeal. Because there is a complete reporter's record, Heather was able to fully brief, and we were able to fully review, whether the judgment is supported by legally and factually sufficient evidence. *See Hatteberg v. Hatteberg,* 933 S.W.2d 522, 529 (Tex. App.-Houston [1st Dist.] 1994, no writ) (when the record includes a full reporter's record, a trial court's findings of fact are not conclusive in appellate review of evidentiary sufficiency).[1] Accordingly, we overrule issue four.

Having overruled the parents' four issues, we affirm the trial court's judgment.

---

1. *See, e.g., Stubbs v. Stubbs,* 715 S.W.2d 373, 374 (Tex App.-Houston [1st Dist.] 1986, no writ) (no harm where record was adequate for review of evidentiary sufficiency)