Motion for Rehearing Overruled; Memorandum Opinion of July 28, 2005
Withdrawn; Affirmed and Substitute Memorandum Opinion filed October 27, 2005









Motion for Rehearing Overruled;
Memorandum Opinion of July 28, 2005 Withdrawn; Affirmed and Substitute
Memorandum Opinion filed October 27, 2005.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-04-00463-CV

_______________

 

 

IN THE INTEREST OF M.D.V.

 

________________________________________________________________

 

On Appeal from the 314th District Court

Harris County, Texas

Trial Court Cause No. 02‑03051J

________________________________________________________________

 

S U B S T I T U
T E   M E M O R A N D U M   O P I N I O N

We overrule appellant=s motion for rehearing.  We withdraw our opinion dated July 28,
2005 and issue this substitute memorandum opinion.  Appellant appeals the involuntary termination
of her parental rights to her daughter, M.D.V. 
In two issues, she contends the evidence is legally and factually insufficient
to support (1) the trial court=s finding of endangerment under section 161.001(1)(E) of the
Texas Family Code, and (2) the trial court=s finding that termination of the parent-child
relationship is in M.D.V.=s best interest.  We
affirm.








I. 
Background

Appellant has four children, including M.D.V., who was
two-and-a-half years old at the time of trial. 
In April 2002, the Texas Department of Protective and Regulatory
Services (Athe Department@) took possession of M.D.V., who was
then four months old, and her two older siblings.[1]  The Department took possession because M.D.V.=s then two year old sister was found
wandering by herself near a busy street outside appellant=s apartment.  At that time, appellant already had a history
with the Department because M.D.V. had tested positive for marijuana at birth,
and the Department had previously received reports of appellant=s failure to supervise her children
and her drug use while caring for her children.

After the children were removed, reunification became the
Department=s goal.  The Department was granted temporary
conservatorship of the children. 
Appellant was ordered to complete a family service plan to get the
children back.  The plan required
appellant to complete parenting classes, a drug assessment, and drug treatment,
seek stable employment, and maintain proper housing.  Appellant completed the parenting classes,
drug assessment, and drug treatment, but it is disputed whether she sought
stable employment or maintained proper housing.








The children were returned to appellant in September of
2003.  As a condition for keeping the
children, appellant was required to submit to random drug testing and continue
to seek stable employment and maintain proper housing.  Carrie Coleman, an employee of the Department=s AFamily Base Safety Services,@ was assigned to assess appellant=s needs and help her improve her
parenting skills.  Coleman assessed that
appellant needed to learn parenting skills for small and special needs
children,[2]
child development skills, child safety skills, anger management, and housing
and behavior modification.  According to
the Department, appellant made no progress toward completing the program Coleman
designed for her because she was either not home for Coleman=s scheduled visits or was angry and
uncooperative.  As we will later describe
in more detail, Coleman also observed acts which she thought endangered the children=s safety.  Further, the Department believed appellant
was not employed and did not maintain adequate housing after the children were
returned to her.  Moreover, appellant
failed a random drug test in November 2003.

In January 2004, the Department again removed the children
from the home.[3]  Following a bench trial in April 2004, the
trial court terminated appellant=s parental rights to M.D.V. and the
youngest child.[4]  M.D.V.=s father had filed an affidavit
waiving his interest; therefore, the trial court also terminated his parental
rights to M.D.V.

II. 
Standard of Review

The burden of proof at trial in parental termination cases is
by clear and convincing evidence.  Tex. Fam. Code Ann. ' 161.001 (Vernon 2002); In re
J.F.C., 96 S.W.3d 256, 263 (Tex. 2002); In re J.I.T.P., 99 S.W.3d
841, 843 (Tex. App.CHouston [14th Dist.] 2003, no pet.).  AClear and convincing evidence@ means the measure or degree of proof
that will produce in the mind of the trier of fact a firm belief or conviction
as to the truth of the allegations sought to be established.  Tex.
Fam. Code Ann. ' 101.007 (Vernon 2002); In re J.F.C., 96 S.W.3d at
264.








When determining legal sufficiency, we review all the
evidence in the light most favorable to the finding Ato determine whether a reasonable
trier of fact could have formed a firm belief or conviction that its finding
was true.@ 
In re J.F.C., 96 S.W.3d at 266; In re J.I.T.P., 99 S.W.3d
at 843B44. 
To give appropriate deference to the factfinder=s conclusions, we must assume that
the factfinder resolved disputed facts in favor of its finding if a reasonable
factfinder could do so.  In re J.F.C.,
96 S.W.3d at 266; In re J.I.T.P., 99 S.W.3d at 844.  We disregard all evidence that a reasonable
fact finder could have disbelieved or found to have been incredible. In re
J.F.C., 96 S.W.3d at 266; In re J.I.T.P., 99 S.W.3d at 844.

When reviewing factual sufficiency, we determine Awhether the evidence is such that a
factfinder could reasonably form a firm belief or conviction about the truth of
the State=s allegations.@ 
In re J.F.C., 96 S.W.3d at 266; see In re J.I.T.P., 99
S.W.3d at 844.  We consider whether
disputed evidence is such that a reasonable factfinder could not have resolved
that disputed evidence in favor of its finding. 
In re J.F.C., 96 S.W.3d at 266; In re J.I.T.P., 99 S.W.3d
at 844.  AIf, in light of the entire record,
the disputed evidence that a reasonable factfinder could not have credited in
favor of the finding is so significant that a factfinder could not reasonably
have formed a firm belief or conviction, then the evidence is factually
insufficient.@ 
In re J.F.C., 96 S.W.3d at 266; In re J.I.T.P., 99 S.W.3d
at 844.

The natural right between parents and their children is one
of constitutional dimension.  Holick
v. Smith, 685 S.W.2d 18, 20 (Tex. 1985); In re U.P., 105 S.W.3d 222,
229 (Tex. App.CHouston [14th Dist.] 2003, pet.
denied).  Therefore, termination
proceedings should be strictly scrutinized, and the involuntary termination
statutes should be strictly construed in favor of the parent.  Holick, 685 S.W.2d at 20B21; In re U.P., 105 S.W.3d at
229.

III. 
Discussion








To terminate a parent‑child relationship, a trial court
must find by clear and convincing evidence that (1) the parent committed one or
more of the acts specifically named in section 161.001(1) of the Texas Family
Code as grounds for termination, and (2) termination is in the best interest of
the child.  Tex. Fam. Code Ann. ' 161.001; In re J.I.T.P., 99
S.W.3d at 844.  Here, the trial court
found by clear and convincing evidence that appellant Aengaged in conduct or knowingly
placed [M.D.V.] with persons who engaged in conduct which endangers the physical
or emotional well-being of [M.D.V.],@ see Tex. Fam. Code Ann. ' 161.001(1)(E), and that termination
of the parent-child relationship is in M.D.V.=s best interest.  Appellant challenges both findings.

A.        Endangerment
Pursuant To Section 161.001(1)(E)

In her first issue, appellant contends the evidence is
legally and factually insufficient to support the trial court=s endangerment finding.[5]  Under section 161.001(1)(E), Aendanger@ 
means to jeopardize or expose the child to loss or injury.  In re J.I.T.P., 99 S.W.3d at 844
(citing Tex. Dep=t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987)).  While Aendanger@ means Amore than a threat of metaphysical
injury or the possible ill effects of a less‑than‑ideal family
environment,@ the endangering acts need not be
directed at or cause actual injury to the child.  Boyd, 727 S.W.2d at 533; see In re
J.I.T.P., 99 S.W.3d at 844. 
Endangerment may be satisfied by showing a parent engaged in a course of
conduct that endangered the child=s physical and emotional
well-being.  In re U.P., 105
S.W.3d at 233.  Endangerment can be
exhibited through actions and omissions. 
Id.; In re J.I.T.P., 99 S.W.3d at 844.  Further, acts of endangerment may precede the
child=s birth.  In re U.P., 105 S.W.3d at 234; In
re J.I.T.P., 99 S.W.3d at 844.  Here,
the Department contends the trial court=s endangerment finding is supported
primarily by evidence of appellant=s drug use, but also by evidence that
appellant did not adequately protect or supervise her young children.

1.         Appellant=s Drug Use








Endangerment under section 161.001(1)(E) may include evidence
of drug addiction and its effect on a parent=s life and ability to perform the
duties of a parent.  In re U.P.,
105 S.W.3d at 234B36.  Appellant=s history of drug use is
undisputed.  The evidence demonstrates
that she has used marijuana for at least ten years[6]
and also used cocaine and illegal prescription drugs in the past.  Although appellant acknowledges her
addiction, she contends her drug use has not endangered her children because
they have not been physically harmed and are in good health.

To the contrary, appellant admitted using marijuana and
illegal prescription drugs while she was pregnant with M.D.V.[7]  A mother=s use of drugs during pregnancy may
be conduct which endangers the physical and emotional well‑being of the
child.  In re S.M.L.D., 150 S.W.3d
754, 757 (Tex. App.CAmarillo 2004, no pet.); In re W.A.B., 979 S.W.2d 804,
806 (Tex. App.CHouston [14th Dist.] 1998, pet.
denied), disapproved of on other grounds by In re J.F.C., 96 S.W.3d at
267; Dupree v. Texas Dep=t of Protective and Regulatory Servs., 907 S.W.2d 81, 84 (Tex. App.CDallas 1995, no writ).  Here, appellant=s drug use did physically harm
M.D.V. because she was born with marijuana in her system.  Nonetheless, appellant suggests M.D.V. was
not harmed because there is no evidence of any resulting medical condition.  However, we reject the suggestion that a baby
born with the abnormal condition of marijuana in her system has not been harmed
simply because there is no evidence of further medical effects.  Regardless, the endangering act need not
cause actual injury to the child; it is sufficient that the act jeopardizes or
exposes the child to loss or injury.  See
Boyd, 727 S.W.2d at 533;  In re
J.I.T.P., 99 S.W.3d at 844.  Here,
appellant=s drug use while pregnant endangered
M.D.V. because she was exposed to the possibility of being born with adverse
medical conditions.








Moreover, appellant admitted she used drugs when her children
were in her care.  Before the Department
first took custody of the children, there was a time when she used marijuana
daily.  She also used cocaine and illegal
prescription drugs while some of the children were in her care although she
last used these substances approximately three or four years before trial.  Appellant argues that there is no evidence of
how her drug use while caring for her children endangered them.  However, the trial court could have formed a
firm belief or conviction that appellant=s use of a mind-altering, illegal
substance while caring for her children jeopardized or exposed the children to
loss or injury.  See In the
Interest of N.K., 99 S.W.3d 295, 300 (Tex. App.CTexarkana 2003, no pet.) (stating
that the specific danger to the child=s well‑being need not be
established as an independent proposition, but may be inferred from parental
misconduct).

Moreover, the record contains evidence of appellant=s inability or unwillingness to
abstain from drug use despite its effect on M.D.V. and on appellant=s ability to maintain a relationship
with M.D.V.  In particular, appellant
resumed using marijuana a few months after M.D.V.  was born marijuana-positive.  Further, appellant used marijuana even after
the children were returned to her in September 2003.  She tested positive for marijuana on a random
drug test in November 2003Capproximately five months before trial.  Appellant claimed she was not using marijuana
consistently when she failed the test. 
Rather, she characterized this occasion as an isolated incident and
notes she passed a random drug test a month later.








However, there was some evidence the November 2003 relapse
was not an isolated incident.  Carrie
Coleman testified that appellant appeared Ahigh@ on several of her visits. Further,
the record contains evidence that appellant did not fully submit to mandatory
drug testing after the children were returned to her.  Isaac Stevens, a Turning Point counselor,
testified that appellant appeared only twice for random urinalysis despite
thirteen attempts to contact her. 
Stevens also testified that based on his experience, a client who does
not appear or cannot be located after numerous attempts is trying to avoid the
test.  

Appellant asserts that Stevens=s testimony was inadmissible hearsay
because it was not based on his personal knowledge but rather based on a log
prepared by his secretary.[8]  Stevens first testified that his secretary
attempted to contacted appellant to appear for drug testing.  After appellant made a hearsay objection,
Stevens stated that his testimony was based on a log.  Appellant then objected that the log was not
introduced and Stevens had no personal knowledge of the information contained
in the log.  However, Stevens then
testified that he had personal knowledge of the information in the log, and the
court overruled appellant=s objection.  Based on
this exchange, we cannot conclude the trial court abused its discretion by
admitting Stevens=s testimony.  See
Santos v. Comm=n for Lawyer Discipline, 140 S.W.3d 397, 401 (Tex. App.CHouston [14th Dist.] 2004, no pet.)
(recognizing trial court=s decision to admit evidence is reviewed for abuse of
discretion).   Further, Stevens=s testimony is cumulative of other
evidence because Carrie Coleman testified, without objection, that Turning
Point informed her appellant consistently missed random drug test
appointments.  See Nissan Motor
Co. v. Armstrong, 145 S.W.3d 131, 144 
(Tex. 2004) (recognizing that erroneous admission of evidence is
harmless if it is merely cumulative).








In contrast, appellant testified that Turning Point never
left her messages except the two times when she did appear.  However, as fact-finder, the trial court
could believe Stevens and infer that appellant avoided the tests, fearing she
would not pass.  See In re U.P.,
105 S.W.3d at 235.  Nevertheless, even if
the November 2003 drug use was an isolated incident, appellant relapsed at that
time despite knowing that abstention was a condition for keeping her children
and that her conduct was subject to scrutiny.

Consequently, considering appellant=s extensive drug use for ten years,
particularly while pregnant with M.D.V. and while caring for her children, her
inability or unwillingness to abstain from drug use after M.D.V. was born
marijuana positive, and her relapse after the children were returned to her,
the trial court could have formed a firm belief or conviction that appellant
engaged in a course of conduct which endangered M.D.V.  See In re S.M.L.D., 150 S.W.3d
at 757B58 (holding that mother=s drug use during pregnancy and after
child was removed from her care, in face of random drug testing that placed her
relationship with child at risk, was factually and legally sufficient evidence
that she engaged in course of conduct which endangered her child); Robinson
v. Tex. Dept. of Protective and Regulatory Servs., 89 S.W.3d 679, 686B87 (Tex. App.CHouston [1st Dist.] 2002, no pet.)
(holding mother=s drug activity and violation of community supervision after
agreeing not to commit such acts in reunification plan established clear and
convincing proof of endangerment; her testimony that drug problems ceased
within two months before trial did not outweigh evidence that her drug use had
been ongoing for twenty years).

2.         Failure to
Adequately Protect or Supervise the Children  

The Department also contends that appellant=s failure to adequately protect or
supervise her young children supported the trial court=s endangerment finding.  Before the children were first removed from
the home, the Department received a report that appellant left her oldest child
without adult supervision although he is disabled and lacks mental maturity to
be left unattended.  The Department also
received a report that appellant=s drug use impaired her ability to
adequately monitor her children=s well-being.[9]








In addition, the Department cites the incident which prompted
the Department to initially remove the children from the home.  In particular, M.D.V.=s two-year-old sister wandered out of
the home by herself and was found by two passers-by near the busy street.  They took the child to a security officer at
a nearby mall who contacted the police. 
Appellant testified that she noticed the child open the door to go
outside and told her not to.  However,
appellant did not immediately retrieve the child because she was tending to her
son.  By the time she went outside to
retrieve the child, she had already been picked up.  Appellant claims that the child was not gone
very long.  However, she was gone long
enough to be picked up by strangers, who fortunately were benevolent.

Further, during Carrie Coleman=s visits to the home, she observed
appellant=s failure to supervise the
children.  Of particular concern, Coleman
once found appellant on the phone in the dining room, and M.D.V., who was less
than two years old, in a bathtub full of water. 
Appellant contends that there is no evidence demonstrating how long she
left M.D.V. in the bathtub.  However,
Coleman opined that she was placed in immediate danger in that situation.








Moreover, Coleman testified that one of appellant=s children would open the door and
leave the home although Coleman advised appellant to place safety locks on the
doors.[10]  Coleman also testified that on one occasion,
appellant went to her car to get M.D.V.=s cup and when she got home, M.D.V.
had opened the door and was coming outside. 
It is unclear whether M.D.V. is the same child who would leave the home
as Coleman earlier described. 
Nonetheless, Coleman expressed concern that at least one child would
leave the home and that appellant left the children unattended.  Finally, Marie Halvatzis, a Child Advocates
volunteer and M.D.V.=s guardian ad litem, also reported that once when she visited
the home, she saw appellant walking across her courtyard.  When Halvatzis arrived at appellant=s apartment, only appellant and her
baby were there, leading Halvatzis to believe she had left the baby unattended.

Again, appellant asserts that there is no evidence the
children were actually endangered in these situations.  However, parental neglect can be as dangerous
to the well‑being of a child as direct physical abuse. See In re M.C.,
917 S.W.2d 268, 270 (Tex. 1996).  In
particular, appellant=s conduct in leaving her young children unattended,
allowing  one or more of them to leave
the home, and leaving M.D.V. in a full bathtub could easily have resulted in
tragedy.  Thus, the trial court could
have formed a firm belief or conviction that appellant=s failure to protect or supervise her
children jeopardized or exposed M.D.V. to loss or injury.  See id. (holding evidence mother=s two toddlers were found wandering a
highway alone, toddlers were left alone in a car, baby was left home alone,
family lived in extraordinarily unsanitary conditions, and mother was
inattentive to children=s health issues supported endangerment finding although
mother did not commit direct physical abuse).

In sum, after reviewing all the evidence, we conclude there
is legally and factually sufficient evidence under the clear and convincing
evidence standard to support the trial court=s finding that appellant engaged in
conduct which endangered M.D.V.=s physical and emotional well-being pursuant to section
161.001(1)(E) of the Texas Family Code. 
We overrule appellant=s first issue.

B.        Best
Interest Of M.D.V.








In her second issue, appellant contends the evidence is
legally and factually insufficient to support the trial court=s finding that termination is in
M.D.V.=s best interest.  There is a strong presumption that preserving
the parent‑child relationship is in the best interest of a child.  See In re J.I.T.P., 99 S.W.3d at 846
(citing Tex. Fam. Code Ann. '' 153.131(b), 153.191, and 153.252
(Vernon 2002)).  It is the Department=s burden to rebut this
presumption.  Id. (citing Hall
v. Harris County Child Welfare Unit, 533 S.W.2d 121, 122B23 (Tex. Civ. App.CHouston [14th Dist.] 1976, no
writ)).  The Texas Supreme Court has
compiled non-exclusive factors to consider when determining the best interest
of a child including (1) the child=s desires, (2) the child=s emotional and physical needs now
and in the future, (3) the emotional and physical danger to the child now and
in the future, (4) the parental abilities of the individuals seeking custody,
(5) the programs available to assist these individuals to promote the best interest
of the child, (6) the plans for the child by these individuals or by the agency
seeking custody, (7) the stability of the home or proposed placement, (8) the
acts or omissions of the parent which may indicate that the existing parent‑child
relationship is not proper, and (9) any excuse for the acts or omissions of the
parent.  Holley v. Adams, 544
S.W.2d 367, 371B72 (Tex. 1976); see In re J.I.T.P., 99 S.W.3d at
846.  We will discuss several of these
factors together because the evidence overlaps.

Emotional and physical danger to the child now and in
the future; acts or omissions of the parent which may indicate the existing
parent‑child relationship is not proper; and programs available to promote the best interest of the child








The trial court=s finding that termination is in
M.D.V.=s best interest is supported
primarily by appellant=s conduct which endangered M.D.V. and her resistance to
changing that conduct.  See In
re S.M.L.D., 150 S.W.3d at 759 (recognizing evidence offered to prove
section 161.001(1) ground for termination is also relevant in determining if
termination is in the child=s best interest). 
Although appellant emphasizes that she is a loving parent and has not
committed any overt acts of physical abuse, her purported concern is outweighed
by the emotional and physical danger to the children caused by her drug use and
failure to supervise them.  See In re
U.P., 105 S.W.3d at 231 (recognizing evidence of drug use has been held
legally sufficient to support finding that termination is in child=s best interest).  In particular, the fact that appellant
resumed using marijuana shortly after M.D.V. was born marijuana-positive
demonstrates her inability or unwillingness to consider the effect of her drug
addiction on M.D.V.

Despite appellant=s past conduct, the Department
attempted to work with her for almost two years, so she could keep her
children.  However, there is
significant  evidence that she did not
substantially comply with the Department=s requirements and  programs. 
As we have discussed, she relapsed after the children were returned to
the home despite knowing that abstention was a condition for keeping them.  Further, the record contains evidence that
she did not comply with the mandatory drug testing.  Thus, the trial court could question whether
she would abstain from drug use in order to care for M.D.V.

Appellant asserts she is making efforts to control her
addiction.  She testified that she had
attended Narcotics Anonymous (ANA@) meetings for several months before trial.  However, some evidence negated her commitment
to NA.  She admitted she began attending
the meetings because the Department told her to, and she had not obtained a
sponsor.  Kimberly Landry, the children=s current caseworker, testified
appellant provided proof of having attended only a few meetings.  Further, although appellant previously
completed NA=s Atwelve steps,@ she admitted she had recently fallen
back to the first step.  In addition,
appellant relapsed even after completing the drug treatment required by the
Department.  Thus, the trial court could
reasonably infer that participating in NA would not necessarily curb her drug
use.








Moreover, appellant made no progress towards completing the
program Coleman implemented after the children were returned to the home.  Coleman testified appellant was not home for
the majority of their scheduled visits. 
Appellant gave various excuses for missing their visits but could not
confirm the excuses.  When Coleman was
able to meet with appellant, she was angry, uncooperative, and inattentive and
would Arant and rave@ about the Department.  In addition, Coleman testified that appellant
did not follow her advice regarding child safety and supervision.  As we have discussed, the children were
initially removed because M.D.V.=s sister left the home by
herself.  Yet, a year and a half later,
Coleman was still concerned about appellant=s allowing one or more of the
children to leave the home. When Coleman tried to caution appellant about
leaving the children unattended, appellant became Avery, very angry.@

Likewise, Marie Halvatzis reported that appellant failed to
cooperate with the Department=s extensive attempts to work with her over a two-year
period.  Even appellant=s sister agreed that appellant was
difficult to work with and was not surprised she had not cooperated fully with
the Department.  Appellant argues that
the Department employees were hostile and belittled her.  However, as fact-finder, the trial court could
believe that, instead, appellant resisted their efforts to work with her.  All three persons who attempted to work with
appellantCColeman, Landry, and HalvatzisCultimately opined that her parental
rights to M.D.V. should be terminated. 
Therefore, the evidence weighs in favor of a finding that appellant
would not likely change her conduct if M.D.V. was returned to her and, thus,
would endanger M.D.V. in the future.

The child=s desires

The record also contains evidence on several other factors
relevant to the Abest interest@ finding.  Because
M.D.V. is a toddler, she cannot articulate her desires.  We note appellant has consistently visited
her children twice a month while in the Department=s care and behaved appropriately
during the visits.  Jessica DeLeon,
appellant=s friend, testified that appellant
has a bond with her children.  However,
Kimberly Landry testified appellant=s bond with M.D.V. is not as strong
as her bond with her older children because M.D.V. was merely four months old
when initially removed from the home. 
Even appellant=s sister agreed that M.D.V. has not been around appellant
long enough to bond with her.  Therefore,
the evidence that M.D.V. has not bonded strongly with appellant weighs in favor
of the trial court=s finding.








The child=s emotional and physical needs now
and in the future

The evidence demonstrates M.D.V. is in a Aloving, wholesome@ foster home that meets her physical
and emotional needs.  She has adjusted
well to the home, is welcomed by the foster parents= own children, and participates in
church and community activities.  In
contrast, there is evidence negating appellant=s ability to meet M.D.V.=s emotional and physical needs.  Specifically, the Department presented
evidence that appellant was unwilling to secure stable employment although
stable employment was a condition for keeping the children.

Appellant acknowledged she was not employed when the
Department first took the children in April 2002 and had short-term, sporadic
employment for the next two years.[11]  Significantly, appellant did not seek
employment when the children were returned to her in September 2003.  She claimed that she was physically unable to
work after her youngest child=s birth although two months had passed since his birth and no
doctor forbid her from working. 
Regardless, appellant asserts she has now obtained employment sufficient
to meet her children=s needs.  She testified
that within two months before trial, she had begun cleaning apartments and
working part-time at a cafeteria.  She
explained that these jobs pay a total of approximately $1,200 per month, which
is enough to pay her rent and buy the children=s food.  However, her obtaining these jobs within two
months before trial does not establish stable employment, considering her
failure to maintain employment for a substantial length of time.[12]








In addition, Halvatzis=s report questioned appellant=s ability to meet her children=s immediate physical needs.  Halvatzis reported that at the time of trial,
appellant=s three younger children were not
toilet trained although one child was four-and-a-half years old.  Further, the report expressed the Department=s Aextreme concern@ that appellant sometimes asked
M.D.V., a young toddler, to give the baby his bottle.  In sum, the evidence weighs in favor of a
finding that appellant is not able to meet M.D.V.=s emotional and physical needs.

The plans for the child by the individuals or the
agency seeking custody, and the stability of the home or proposed placement

Landry and Halvatzis both testified M.D.V. is adoptable.  Landry testified M.D.V.=s paternal grandmother is interested
in adopting her, and the Department is willing to consider her.  Halvatzis believes M.D.V. should be adopted
by her current foster parents, who are providing a stable home.  In any event, the evidence reflects that the
Department will seek a permanent, adoptive home for M.D.V.

In contrast, some evidence negated appellant=s ability to provide a stable
home.  Appellant emphasizes that she has
lived in the same apartment for more than a year.  Regardless, the Department was concerned
about her ability to maintain adequate housing when she had no stable job and
the Department did not know who paid her rent. 
Appellant testified her mother has paid her rent.  However, when Coleman previously asked how
her mother paid the rent when her mother did not work, appellant then said that
two men in her apartment complex pay her rent. 
Coleman told appellant that arrangement was unacceptable because it was
not guaranteed.








Appellant testified that she plans to support the children
through her job and family, although this support was somewhat vague; she
stated that her sister, aunts, and uncles Aget what the child needs.@ 
Appellant=s sister testified she was willing to be appointed managing
conservator of the two younger children. 
However, she has her own history with the Department based on drug use
and had only recently formally offered to raise the children.  Appellant=s friend, Jessica Deleon, testified
she would assist appellant in many ways. 
However, she has her own three children to raise.  Further, although she did not condone
appellant=s conduct, she seemed to explain it
by emphasizing appellant did not use drugs in front of the children or give
them drugs.  Consequently, the trial
court could reasonably conclude appellant would not provide a stable home for
M.D.V. because she relied on dubious other sources to pay her rent and provide
for the children.[13]

Any excuse for the acts or omissions
of the parent

On the one hand, appellant acknowledged her drug addiction
although she claimed it is in the past. 
On the other hand, appellant did not acknowledge that her drug use
harmed or endangered her children. 
Instead, she stressed that she did not use drugs in front of the
children.  Additionally, according to
Halvatzis=s report, when the children were
first removed, appellant stated she used marijuana to alleviate the stress of
being solely responsible for several young children.  Further, appellant=s testimony indicates she blames others
for some of her conduct; she blamed Turning Point for her failure to submit to
random drug testing and blamed Coleman for her own uncooperative attitude.  Halvatzis confirmed that appellant has not
taken responsibility for her role in the children being twice removed from her
home.  Thus, appellant has not offered
any excuses which provide reassurance her conduct would not continue if the
children were returned to her.  Consequently,
this factor does not weigh in appellant=s favor.








In sum, after weighing the evidence as it relates to the Holley
factors, we conclude there is legally and factually sufficient clear and
convincing evidence to support the trial court=s finding that termination of the
parent‑child relationship is in M.D.V.=s best interest.  See In re S.M.L.D., 150 S.W.3d at
759B61 (holding evidence that mother=s drug use endangered child, she was
unemployed for two years before trial, and she lacked stable home was legally
and factually sufficient to support finding that termination was in child=s best interest despite conflicting
evidence of mother=s commitment to abstention and evidence that she attended
visitation and complied with some requirements for regaining custody).  We overrule appellant=s second issue.

Accordingly, the judgment of the trial court is affirmed.

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered
and Substitute Memorandum Opinion filed October 27, 2005.

Panel consists of Chief Justice Hedges and Justices
Fowler and Seymore.

 

 

 











[1]  Appellant=s youngest child was not yet born at that time.





[2]  Appellant=s oldest child has a form of autism or mental
retardation.





[3]  This time, the
Department also removed the youngest child, who had been born in the meantime.





[4]  This appeal
concerns M.D.V. only.  The order
terminating appellant=s parental rights to her youngest child was
interlocutory pending a trial concerning his father=s parental rights. 
Appellant is now pursuing a separate appeal of that termination.  The cases concerning the two older children
were severed.





[5]  Although
appellant challenges the trial court=s
finding of Achild abuse,@ the
trial court did not use the term Aabuse.@  Rather, the
trial court=s order tracked the language of section
161.001(1)(E).  Thus, we will consider
the sufficiency of the evidence with respect to the trial court=s finding as stated.





[6]  Appellant
testified that she had been using marijuana at least since the birth of her
oldest child, who was almost ten years old at the time of trial.





[7]  Appellant
testified that she did not use marijuana while pregnant with her two older
children, but she resumed using marijuana after their births.





[8]  We question
whether appellant has properly presented this complaint for appellate review
because she raises no separate issue to challenge the admissibility of Stevens=s testimony.  See
Tex. R. App. P. 38.1(e) (stating
that appellant=s brief must state concisely all issues presented for
review).  Instead, she buries most of her
complaint regarding Stevens=s testimony in the AStatement
of Facts@ portion of her brief although she briefly mentions
this complaint in the AArgument@ portion
of her brief.  Nonetheless, because
appellant challenges the sufficiency of the evidence to support termination, we
will consider her complaint regarding Stevens=s
testimony.





[9]  The record
reflects that these referrals were closed and merged into the present case. 





[10]  According to
appellant, Coleman was referring to the one, initial incident involving M.D.V.=s sister that prompted the Department to first take
custody of the children and was not referring to ongoing behavior.  However, Coleman testified that she
child-proofed the home and made recommendations on her first visit, but A[e]ach time I would make subsequent visits, I noticed
that she did not adhere to the recommendations of the agency.  She had a child who would open the door and
just leave the home.@  Because
Coleman did not work with appellant until a year and a half after the initial
incident, her testimony indicates she is referring to a different
incident.  Further, Coleman=s testimony indicates that she is referring to more
than one incident.





[11] Appellant testified that during this period, she
worked about two months as a security guard, but left due to her
pregnancy.  She also worked short-term in
an automobile detail shop, but left because business was slow.  In contrast, Coleman testified that she went
to the detail shop, but it was open only once and appellant was not there.  Nevertheless, even if appellant did work at
the detail shop, the work was short-term.





[12]  In her brief,
appellant asserts the Department did not assist her in securing employment, as
required.  However, she does not cite any
evidence which supports this contention. 
Further, she states she had difficulty securing employment because she
is an Aex-felon,@ but she
does not cite any evidence of a criminal record.





[13]  Coleman also
expressed concern that during her visits, several different men were in
appellant=s home.  Once,
Coleman felt threatened because one man asked whether she was Ascared@ while another man was present.  She cautioned appellant about this Atraffic@ when a
young girl lived in the home.  In
contrast, appellant claimed she allowed only one man in her home; he was a
close friend and no risk to the children. 
However, the trial court could believe Coleman and conclude the presence
of these men contributed to an unstable home, although their presence alone
might not prove the home was unstable.