

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00263-CV

IN THE INTEREST OF M.H., II, A
CHILD

----------

FROM COUNTY COURT AT LAW NO. 1 OF PARKER COUNTY
TRIAL COURT NO. CIV-14-0611

----------

## CONCURRING AND DISSENTING MEMORANDUM OPINION[1]

----------

I agree that the evidence was legally and factually sufficient to support the trial court's judgment terminating Father's parental rights and, therefore, concur in that portion of the opinion. But I must dissent from the majority's conclusion that the evidence was factually insufficient to support the termination of Mother's parental rights on endangerment grounds.

---

[1]*See* Tex. R. App. P. 47.4.

This is not a case where the evidence shows a long history of neglect, abuse, or violence clearly directed at a child from the parent whose rights were terminated. But the absence of such direct evidence does not foreclose termination of parental rights. *See In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g) (recognizing parent's conduct does not necessarily have to be directed at child, nor is child required to suffer injury, to support termination based on endangerment). Under section 161.001(b)(1)(D) and (b)(2), a parent's rights may be terminated if that parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child" and if termination is in the child's best interest. Tex. Family Code Ann. § 161.001(b)(1)(D), (2) (West Supp. 2015).[2] Although section 161.001(b)(1)(D) is not grounds for termination if a parent is entirely unaware of the endangering environment, it is enough if the parent was aware of the potential for danger to the child in the environment, yet disregarded that risk. *See In re S.M.L.*, 171 S.W.3d 472, 477–78 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (collecting cases); *see also M.R.J.M.*, 280 S.W.3d at 502–05 (concluding evidence was factually sufficient to support termination of Father's rights under subsection D when Father allowed child to remain with Mother because Father disregarded the

---

[2]Because the 2015 amendments to section 161.001 did not operate to amend the substance of the grounds upon which a termination of parental rights may be based, I will cite to the current version of the statute as does the majority.

potential for an endangering environment with Mother based on Father's knowledge of Mother's past drug abuse). Domestic violence, lack of self-control, and a propensity for violence may be considered as evidence of an endangering environment. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.). A child's environment includes the parents' conduct in the home. *In re W.S.*, 899 S.W.2d 772, 776 (Tex. App.—Fort Worth 1995, no writ). It follows, therefore, that inappropriate or abusive conduct by a person living in the home with the child or with whom the child is compelled to associate on a regular basis is considered to be part of the child's environment. *See In re J.L.W.*, No. 02-08-179-CV, 2008 WL 4937970, at *6 (Tex. App.—Fort Worth Nov. 20, 2008, no pet.) (mem. op.).

In this case, Amanda Rodriguez, Mother and Father's conservatorship worker, testified that although Mother was concerned with how Father treated M.H., she was not willing to protect him from Father. Rodriguez warned Mother and Father that their explanation for M.H.'s broken rib was improbable, that the perpetrator had to be either Mother or Father, and that their parental rights were in danger of being terminated. Even so, Mother continued to stay with Father, which as Rodriguez recognized, meant Mother was not willing to leave Father even if she knew Father had broken M.H.'s rib. Rodriguez testified that based on her work on the case, Mother knowingly allowed M.H. to remain in conditions or surroundings that endangered M.H.'s physical or emotional well-being.

3

Mother and Father's family therapist, Jill Bounds, testified that at their joint sessions, Father was listening to music on his headphones, had his eyes closed, and was "not really engaged." Mother told Bounds that she was not "a hundred percent sure her husband [broke M.H.'s rib], or didn't do it," but that she would believe Father. Bounds stated that based on Mother's actions, she concluded that Mother would "stand by her man" even though Mother had concerns about Father's potential danger to M.H. Bounds affirmed that Father's behavior created an environment of fear and had a detrimental effect on Mother and M.H. She was concerned for M.H.'s safety based on Father's behavior.

Mother was aware Father twice tested positive for drugs and also knew that Father refused to take further drug tests.[3] Mother knew it was possible that Father broke M.H.'s rib but never showed that she would or was willing to protect M.H. from Father. During one argument between Mother and Father, Mother testified that she had to ask Father to touch M.H. "a little bit more gently." Mother consistently made excuses for Father's behavior. Mother sustained a head injury as a passenger in a car Father "flipped" three times while speeding based on a dare by Father's friend who was also in the car. Mother jokingly acknowledged

---

[3]The fact that "whether [Father] was still using anything stronger [than marijuana] was speculation" does not detract from the fact that Mother was aware Father was using illegal drugs, that she stated she would leave Father if he used illegal drugs, and that she continued to stay with Father regardless. I disagree with the majority's implicit holding that marijuana use alone cannot rise to the level of endangerment but that perhaps use of another, "stronger" illegal drug would.

4

that Father probably would have acted the same way even if M.H. had been in the car with them, but was not otherwise concerned about the incident. Father had anger-management problems and would punch holes in the walls of the home he shared with Mother and M.H. Father dented a steel door during one incident. Mother's only response to these incidents was thankfulness that he repaired the damages. Mother recognized that her insistence that M.H.'s rib was broken while out of their care—even though the medical evidence established that the injury could not have occurred at a time M.H. was in the care of others—was because she did not want to believe that Father did it. As the majority states regarding the sufficiency of the evidence to terminate Father's parental rights, Mother's "response to the injury of [M.H.] was one of avoidance of responsibility."

When Mother was asked why she stayed with Father, Mother said she could not "see him physically harming his kid" and that "they have no evidence against him." Mother knew how to separate herself and M.H. from endangering circumstances. For example, Mother would not allow Father's friend to live with them any longer after she discovered he was using drugs in their home. But Mother never asked Father to leave the home even though she was aware of his drug use. Mother further stated that even though Father acted before thinking, it would "depend[ ] on the situation" whether that behavior would endanger M.H. Early in the termination proceedings, M.H.'s attorney ad litem told Mother that M.H. could be returned to her care if she left Father. Mother replied that she

5

could not do that. Mother admitted that she "felt like [she] failed [M.H.] by not protecting him."

Even though Mother testified that she would leave Father to keep M.H., Mother never did so. Even though Mother continually asserted that Father could not have harmed M.H. and that a toddler broke M.H.'s rib while out of their care, the medical evidence rendered this theory implausible. Even though Mother could not "see [Father] hurting his kid," she knew Father had anger issues, could not control his impulses, was not gentle with M.H., and used drugs. Mother admitted she informed M.H.'s attorney ad litem that she could not leave Father even if it meant she could not keep M.H. This is the very definition of factually sufficient evidence: the disputed evidence allowed a reasonable fact-finder to form a firm belief or conviction that Mother was aware that placing M.H. in an environment with Father had at least the potential of endangering M.H.'s physical or emotional well-being, but disregarded this risk. *See, e.g.*, *In re M.C.*, No. 04-14-00893-CV, 2015 WL 3616108, at *4–5 (Tex. App.—San Antonio June 10, 2015, pet. denied) (mem. op.); *In re E.M.*, No. 10-14-00313-CV, 2015 WL 3485317, at *6–9 (Tex. App.—Waco May 28, 2015, pets. denied); *In re A.D.C.*, No. 02-13-00149-CV, 2013 WL 5517904, at *12–13 (Tex. App.—Fort Worth Oct. 3, 2013, no pet.) (mem. op.); *Jordan v. Dossey*, 325 S.W.3d 700, 721–22 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). *See generally In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (discussing factual-sufficiency review). Our deferential review of the evidence and section 161.001(b)(1)(D) require nothing

6

more.  Although "the termination of Mother's parental rights to [M.H.] is tragic," which appears to have informed the majority's conclusion, I "cannot conclude it is erroneous."  *In re K.T.*, No. 02-14-00392-CV, 2015 WL 3460979, at *18 (Tex. App.—Fort Worth May 28, 2015, no pet.) (mem. op.).

Because the majority concludes otherwise, I respectfully dissent.


/S/ Lee Gabriel
LEE GABRIEL
JUSTICE

DELIVERED:  February 5, 2016