

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00256-CV

IN THE INTEREST OF V.K.C.K.
AND J.D.B., CHILDREN

----------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

Appellant G.D.H. appeals the termination of her parental rights to V.K.C.K. and J.D.B. She contends in five issues that the evidence is legally and factually insufficient to support the trial court's findings concerning best interest and statutory grounds for termination. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Background

Appellant is V.K.C.K. and J.D.B.'s mother. V.K.C.K. was born January 19, 2001, and her biological father is J.K. J.D.B. was born March 23, 2003, and his biological father is J.A.B. J.K.'s parental rights to V.K.C.K. and J.A.B.'s parental rights to J.D.B. were previously terminated, and neither J.K. nor J.A.B. is a party to this appeal.

The Department of Family and Protective Services (the Department) took custody of V.K.C.K. and J.D.B. in June 2009 after obtaining an emergency order for their protection from the trial court. After a July 2010 bench trial at which Appellant and Department caseworker Cecilia Powers testified, the trial court signed a final order of termination. Specifically, the trial court found that termination of Appellant's parental rights to V.K.C.K. and J.D.B. is in the children's best interest and that Appellant (1) knowingly placed or allowed her children to remain in conditions or surroundings which endangered her children's physical or emotional well being; (2) knowingly engaged in conduct or placed her children with persons who engaged in conduct which endangered her children's physical or emotional well being; (3) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of her children; and (4) has a mental or emotional illness or deficiency that renders her unable to provide for the physical, emotional, and mental needs of her children.

Appellant testified that she does not have a good relationship with her family and that her children are her only "real family." When she was twelve years old, Appellant was physically abused by her mother and step-father, sexually abused by her biological brother, and diagnosed with bipolar disorder. Appellant testified that she still has the bipolar diagnosis, that she has been prescribed Lithium, but that she often runs out of medication. Appellant testified that she understood the importance of regularly taking her medication but said that she ran out of medication three weeks before trial and had not yet had an appointment to obtain more medication. Appellant acknowledged that, without medication, she becomes irritable and depressed and experiences manic phases, but Appellant denied becoming aggressive without medication.

When Appellant was fifteen years old, her mother kicked her out of the house, and Appellant began living with J.K. Both J.K. and Appellant were using methamphetamines at the time, but Appellant testified that she stopped using methamphetamines when she was sixteen. Appellant admitted, however, that she continued using marijuana. Appellant testified that she stopped living with J.K. when she was twenty-one because J.K. used drugs and physically abused her. Appellant testified that V.K.C.K. was six years old at the time and that her decision to leave J.K. showed her ability to make sound decisions for her children.

Appellant subsequently met and married J.A.B., J.D.B.'s father, and Appellant and her children lived with J.A.B. from at least January 2007 through

3

September 2008. They lived in a Gainesville apartment until June 2007, in Mississippi with J.A.B.'s family from June through September 2007, and in a Gainesville motel from September 2007 through September 2008. Appellant testified that in 2008, J.A.B. passed out in the motel room—with the door locked and her children outside—while she was at work. Appellant also testified that J.A.B. smoked a lot of marijuana and that she often smoked marijuana with him, but Appellant said that she did not smoke marijuana when her children were present. Appellant also testified that her children witnessed J.A.B. smoking "ice" and told her about it. Appellant testified that she then had a "falling out" with J.A.B. and that she and her children moved in with her mother from September through December 2008. Appellant testified that her leaving J.A.B. also reflected her ability to make good decisions for her children.

Appellant first met Billy J. in September 2007, and Billy began living with Appellant and her children at Appellant's mother's house in September 2008. Appellant testified that she knew Billy had a felony conviction for injury to a child after scalding the child with hot water, that he had served seven years of a thirty-five year sentence, and that he was on parole. However, Appellant said that she had not seen anything that caused her concern when Billy was around her children, that she lived with Billy because he supported and cared for her and her children, and that there was a positive atmosphere with Billy around. The Department initially offered parenting services to Billy but subsequently

4

determined that he should not have any contact with the children and that Appellant's children could not live with her if she continued seeing Billy.

In December 2008, the Department advised Appellant that she would not be able to keep her children if she continued living with Billy. Thus, Appellant moved out of her mother's house, and Billy moved to a different place. Appellant testified that she subsequently lived with Billy from February through August 2009 but that she did not have possession of her children at the time. Appellant also testified that she had not had any contact with Billy since August 2009 because the Department said that she could never have her children back if she was still with him.

Appellant admitted to using marijuana from the age of twelve through February 2010 and testified that she had not received treatment for her addiction. In addition, Appellant admitted that she tested positive for marijuana use at the time J.D.B. was born in 2003; that she had two convictions for marijuana possession, both occurring after J.D.B. was born;[2] and that she previously smoked marijuana to calm her nerves and get by when she was without her bipolar medication. Moreover, Appellant admitted having four positive marijuana tests during the pendency of this case. However, Appellant denied ever smoking or being under the influence of marijuana around or while supervising her children, and Appellant testified that she had not used marijuana since February

[2]Appellant claimed that the marijuana involved in each conviction belonged to her husband.

5

2010. She said that she had been attending Narcotics Anonymous meetings since March 2010, but she also said that she did not have a Narcotics Anonymous sponsor or sign-in sheets to confirm her attendance.

Appellant last had a job in August 2009 and was evicted from her apartment in December 2009. Appellant testified that she had been homeless since December 2009 and that she had slept on a park bench the night before trial. Appellant agreed that she was unable at the time of trial to provide a safe and healthy home for her children and that she did not have relatives available to help, but she asked the trial court for additional time to establish stability and prove her ability to stay drug-free.

Finally, Appellant testified that V.K.C.K. was sexually abused by a cousin in December 2004 and that Appellant immediately reported the incident to authorities. Appellant also testified that V.K.C.K. is bipolor and has been diagnosed with ADHD.

Department caseworker Cecilia Powers testified that Appellant signed her service plan in July 2009 but did not complete it. Specifically, Appellant was unsuccessfully discharged from individual counseling and did not maintain stable housing or employment. Powers testified that Appellant's homelessness caused concern for the children's safety and stability and that she was additionally concerned that Appellant continued to associate with drug users, even though Appellant claimed to have personally stopped using drugs.

Powers testified that V.K.C.K. and J.D.B. had been in a foster home since June 2009, that they were doing well, that they attend weekly therapy sessions, and that they were performing better in school with the passage of time. Powers said that the Department would like to have the children adopted, and she testified that she believed termination of Appellant's parental rights was in the children's best interest.

### III. Applicable Law

**A. Termination of Parental Rights**

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (Vernon 2008); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the

7

parent. *Holick*, 685 S.W.2d at 20–21; *In re R.R.*, 294 S.W.3d 213, 233 (Tex. App.—Fort Worth 2009, no pet.).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground listed under subsection (1) of the statute and must also prove that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001 (Vernon Supp. 2010); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. §§ 161.001, .206(a). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (Vernon 2008). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification).

**B. Legal Sufficiency Standard of Review**

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could

reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.*

We cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id.* at 573, 574. And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

## C. Factual Sufficiency Standard of Review

In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated the relevant provision of section 161.001(1) and that the termination of the parent-child relationship would be in the best interest of the child. Tex. Fam. Code Ann. § 161.001; *In re C.H.*, 89 S.W.3d at 28. If, in light of

9

the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

## IV. Endangerment Findings

Appellant argues in her second issue that the evidence is legally and factually insufficient to support the trial court's finding that she engaged in conduct or knowingly placed her children with persons who engaged in conduct which endangered their physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(1)(E).

## A. Applicable Law

Under section 161.001(E), the relevant inquiry is whether evidence exists that the endangerment of the children's physical well-being was the direct result of Appellant's conduct, including acts, omissions, or failures to act. *See J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *see also* Tex. Fam. Code Ann. § 161.001(1)(E). Additionally, termination under (E) must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *J.T.G.*, 121 S.W.3d at 125; *see* Tex. Fam. Code Ann. § 161.001(1)(E). It is not necessary, however, that the parent's conduct be directed at the child or that the child actually suffer injury. *Boyd*, 727 S.W.2d at 533; *J.T.G.*, 121 S.W.3d at 125. The specific danger to the children's well-being may be inferred from parental misconduct

standing alone. *Boyd*, 727 S.W.2d at 533; *In re R.W.*, 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied). A parent's mental state may be considered in determining whether the children are endangered if that mental state allows the parent to engage in conduct that jeopardizes the physical or emotional well-being of the children. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

## B. Discussion

The evidence is legally and factually sufficient to support the trial court's section 161.001(1)(E) finding. The evidence reflects that although Appellant testified that she stopped using marijuana in February 2010, she had never received treatment for her addiction and had used marijuana since the age of twelve. In addition, Appellant had two marijuana possession convictions after J.D.B., her youngest child, was born, and she tested positive for marijuana on four separate occasions during the pendency of this case. Moreover, although Appellant testified that she had been attending Narcotics Anonymous since March 2010, she did not have sign-in sheets or a sponsor to confirm her attendance, and she continued to associate with marijuana users even after she personally stopped smoking marijuana. Further, although Appellant denied ever using drugs in her children's presence, Powers testified that Appellant's continued association with drug users jeopardizes her children's safety.

Also, Appellant lived for several years with J.A.B., who regularly abused drugs and passed out in a motel room with V.K.C.K. and J.D.B. locked outside

11

unattended. In addition, Appellant knew about Billy's felony conviction for injury to a child before living with him but nevertheless allowed him to live with her and her children. And she continued living with Billy even after learning that she could not have custody of her children if she lived with him. Although Appellant testified that her decisions to leave J.K. and J.A.B. were best for her children, Appellant had full knowledge of Billy's felony conviction before allowing him to move in with her and her children.

Finally, Appellant was homeless during most of the seven months before trial and had not had a job in almost a year. Although some of Appellant's difficulties relate to her impoverishment, Appellant's conduct both before and after her children's removal indicates an unwillingness to refuse to associate with those who may be a danger to herself and her children. *See generally In re T.T.F.*, 331 S.W.3d 461, 483–84 (Tex. App.—Fort Worth 2010, no pet.); *In re S.G.S.*, 130 S.W.3d 223, 238 (Tex. App.—Beaumont 2004, no pet.).

Viewing all the evidence in the light most favorable to the termination judgment, and disregarding all contrary evidence that a reasonable factfinder could disregard, we hold that the evidence is legally sufficient to support a factfinder's firm conviction or belief that Appellant engaged in conduct that endangered V.K.C.K. and J.D.B.'s physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(1)(E); *J.P.B.*, 180 S.W.3d at 573; *S.G.S.*, 130 S.W.3d at 238. Likewise, giving due deference to the trial court as factfinder, we hold that the evidence is also factually sufficient to support the trial court's finding that

12

Appellant engaged in conduct that endangered V.K.C.K. and J.D.B.'s physical or emotional well-being. *See Jones v. Tex. Dep't of Family & Protective Servs.*, No. 03-07-00727-CV, 2009 WL 1563544, at *8 (Tex. App.—Austin June 4, 2009, no pet.) (holding evidence legally and factually sufficient to support section 161.001(E) finding because, although the appellant had made recent significant progress after years of drug abuse, children had witnessed domestic abuse and had been subjected to a chaotic and violent environment). We therefore overrule Appellant's second issue.[3]

## V. Best Interest Finding

Appellant argues in her fifth issue that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the children's best interest.

## A. Applicable Law

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (Vernon 2008).

---

[3]In light of our disposition of Appellant's second issue, we need not address her first, third, and fourth issues. *See* Tex. R. App. P. 47.1; *see also In re E.M.N.*, 221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.) (stating that a finding of only one ground alleged under section 161.001(1) is sufficient to support a judgment of termination).

13

The following factors should be considered in evaluating the parent's willingness and ability to provide the child with a safe environment:

(1) the child's age and physical and mental vulnerabilities;

(2) the frequency and nature of out-of-home placements;

(3) the magnitude, frequency, and circumstances of the harm to the child;

(4) whether the child has been the victim of repeated harm after the initial report and intervention by the department or other agency;

(5) whether the child is fearful of living in or returning to the child's home;

(6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9) whether the perpetrator of the harm to the child is identified;

(10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

    (A) minimally adequate health and nutritional care;

(B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

(C) guidance and supervision consistent with the child's safety;

(D) a safe physical home environment;

(E) protection from repeated exposure to violence even though the violence may not be directed at the child;  and

(F) an understanding of the child's needs and capabilities; and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

*Id.* § 263.307(b); *R.R.*, 209 S.W.3d at 116.

Other, nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(A)     the desires of the child;

(B)     the emotional and physical needs of the child now and in the future;

(C)     the emotional and physical danger to the child now and in the future;

(D)     the parental abilities of the individuals seeking custody;

(E)     the programs available to assist these individuals to promote the best interest of the child;

(F)     the plans for the child by these individuals or by the agency seeking custody;

(G)     the stability of the home or proposed placement;

(H)     the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

15

(I)     any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).  These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate.  *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child.  *Id.*  On the other hand, the presence of scant evidence relevant to each factor will not support such a finding.  *Id.*

## B.  Discussion

The evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the children's best interest.  The trial court heard evidence that V.K.C.K. and J.D.B. had been exposed to Appellant's physically abusive relationships and had lived with known drug users for most of their lives; that Appellant tested positive for marijuana when J.D.B. was born, continued using marijuana after J.D.B.'s birth, was twice convicted of marijuana possession, and had four positive drug tests during the pendency of the case; that Appellant's family is not available or capable of offering assistance to Appellant in raising her children; that V.K.C.K. was sexually assaulted by a cousin at Appellant's mother's house; that Appellant has a bipolar disorder and often runs out of medication; that Appellant continued to associate with drug users even after she personally stopped abusing drugs; and that

Appellant did not complete her Department service plan and was unsuccessfully discharged from psychological counseling. *See* Tex. Fam. Code Ann. § 263.307(b)(3), (6)–(11), (13). And although there is evidence that Appellant closely checked her children's physical well-being at visitations, the trial court also heard evidence that Appellant was homeless and unable to provide her children with basic necessities or a safe home, that Appellant and her children continually moved from place to place, that Appellant allowed her children to live with Billy with full knowledge of Billy's felony injury-to-a-child conviction, and that V.K.C.K. has ADHD and bipolar diagnoses. *See id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Moreover, the trial court heard evidence that the Department would like to have V.K.C.K. and J.D.B. adopted, that V.K.C.K. and J.D.B. attend weekly therapy sessions and are performing better in school, and that Appellant acknowledged her inability to provide for her children but wanted more time to prove her ability to stay drug free and provide stability for her children. *See Holley*, 544 S.W.2d at 371–72.

Viewing the evidence in the light most favorable to the finding and judgment, we conclude that the evidence is such that the trial court could reasonably form a firm belief or conviction that termination of Appellant's parental rights is in her children's best interest. *See J.P.B.*, 180 S.W.3d at 573. We also conclude, viewing all the evidence in a neutral light, that the trial court could reasonably form a firm conviction or belief that termination is in V.K.C.K. and J.D.B.'s best interest. *See H.R.M.*, 209 S.W.3d at 108. We therefore hold that

17

the evidence is legally and factually sufficient to support the trial court's best interest finding.  *See Jones*, 2009 WL 1563544, at *8 (holding evidence legally and factually sufficient to support best interest finding because the appellant's recent progress toward stability was unproven, her prognosis was "guarded," and her children had improved significantly while living in foster care).  We overrule Appellant's fifth issue.

## VI.  Conclusion

Having overruled Appellant's second and fifth issues, and having not reached her first, third, and fourth issues, we affirm the trial court's order terminating Appellant's parental rights to V.K.C.K. and J.D.B.

ANNE GARDNER
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED:  May 12, 2011