**Opinion filed April 16, 2020**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00332-CV

_____

## IN THE INTEREST OF J.M.S., J.M.P.S., AND A.M.K.S., CHILDREN

**On Appeal from the 318th District Court**

**Midland County, Texas**

**Trial Court Cause No. FM 65,114**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court, after a trial de novo, terminated the parental rights of the mother and father of the children. Both parents filed an appeal. The mother presents five issues in which she challenges the legal and factual sufficiency of the evidence. The father presents a single issue in which he complains of the admission into evidence of photos that depicted the condition of his home. We affirm the trial court's order of termination.

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2019). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

In this case, the trial court found that the parents had committed four of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), (N), and (O). Specifically, the trial court found that each parent had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being, had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being, had constructively abandoned the children, and had failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the children, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent for abuse or neglect. The trial court also found, pursuant to Section 161.001(b)(2), that termination of each parent's parental rights would be in the best interest of the children.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or

conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The record reflects that the family had a history with the Department. In this case, similar to a previous case, the Department's involvement with the family related to the conditions of their home and the parents' drug use. During the initial stages of the present case, A.M.K.S. tested positive for opiates at birth. The Department then lost contact with the family for several months. When the Department contacted the family again, the same issues persisted: the parents' drug use and the conditions of their home. They "still [had] no running water or electricity in the home." The home was filthy and cluttered, and it smelled like feces and urine. The caseworker observed trash bags everywhere and rotting food. The family was

referred to family-based safety services. Neither parent completed any of those services or submitted to drug tests as requested. As a result, the Department removed the children.

The mother had six children. This appeal involves only three of those children: J.M.S., who was eight years old at the time of trial; J.M.P.S., who was four years old at the time of trial; and A.M.K.S., who was almost two years old at the time of trial. The mother's other children had previously been removed and no longer lived with the mother when the Department filed this suit.

At the time of removal, J.M.P.S. tested positive for cocaine, and A.M.K.S. tested positive for methamphetamine. After removal, the parents continued to use methamphetamine. At the adversary hearing, the mother appeared to be under the influence: she was jittery and had no control over her emotions. She also had sores on her hands and face. At the adversary hearing, the trial court ordered the parents to submit to drug testing. The mother told the caseworker that she expected the results of that drug test to be positive, and she was correct. The results revealed high levels of both amphetamine and methamphetamine.

Subsequently, the mother either tested positive for amphetamine and methamphetamine or did not appear as requested for the drug screens. While the termination case was pending, the mother was arrested and indicted for possession of amphetamine, and the father was arrested on a previous warrant for child endangerment. The parents were ordered by the trial court to perform a variety of services, including compliance with their family service plan. Neither parent complied, although they did participate at times in some of the services. The mother testified at the de novo hearing that she had been sober for three months and had received a promotion at her place of employment.

The record reflects that, in addition to their use of methamphetamine, the parents had also engaged in domestic violence while the children were in the home. The mother testified that she was the victim of both physical and verbal abuse committed by the father. Additionally, J.M.S. had indicated that the mother was abusive; he volunteered this statement one day upon seeing the restaurant where his mother worked: "She hurts me." Both J.M.S. and J.M.P.S. had made comments about "being hurt and hit."

The children were initially placed with fictive kin that both parents had recommended. The children were subsequently placed elsewhere after it was discovered that they had been exposed to cocaine during their placement with the fictive kin. All three children were ultimately placed together in an appropriate foster home where all of their needs were being met. The foster parents, who were also fictive kin, wish to adopt all three children. The children had gone from being "lifeless" to "full of life now," and all three were doing well at the time of trial. They had bonded not only with the foster parents but also with the foster parents' biological children. J.M.S. had expressed a clear desire to remain with the foster parents and be adopted by them. The caseworker, the children's attorney ad litem, and the foster father believed that the children would be in danger if returned to the parents.

In her first four issues, the mother challenges the legal and factual sufficiency of the evidence to prove grounds (D), (E), (N), and (O). We need only address one of these four issues—the mother's challenge to the trial court's finding under Section 161.001(b)(1)(E). *See In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law with respect to appellate review of grounds (D) and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either of these grounds).

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Drug use may constitute evidence of endangerment. *Id.* Domestic violence may also constitute evidence of endangerment. *C.J.O.*, 325 S.W.3d at 265; *In re C.E.K.*, 214 S.W.3d 492, 497 (Tex. App.—Dallas 2006, no pet.); *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

Based upon evidence that the mother engaged in domestic violence while the children were in her care, used methamphetamine while the children were in her care, and exposed the children to illegal drugs, the trial court could have found by clear and convincing evidence that the mother engaged in a course of conduct that endangered the children. We hold that the evidence is legally and factually sufficient to uphold the trial court's finding as to the mother under subsection (E). Accordingly, we overrule the mother's second issue. Because only one statutory ground is necessary to support termination and because we have upheld the trial court's finding as to subsection (E), we need not reach the mother's first, third, and fourth issues. *See* FAM. § 161.001(b)(1); *N.G.*, 577 S.W.3d at 234–35.

In her fifth issue, the mother challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights was in the best interest of the children. The mother acknowledged that the conditions

of her home around the time of removal were not appropriate. The caseworker testified that the conditions of the home continued to be a concern every time she visited the home. The mother's use of methamphetamine while this case was pending was also concerning. The mother acknowledged that she had used methamphetamine; she indicated that she was an addict. The evidence also showed that the parents had engaged in domestic violence and that two of the children reported "being hurt and hit."

The children were placed together in an appropriate foster home where all of their needs were being met. The foster parents wish to adopt all three children. The children had improved and were all doing well at the time of trial. They had bonded not only with the foster parents but also with the foster parents' biological children. J.M.S. wanted to remain with the foster parents and be adopted by them. The caseworker, the children's attorney ad litem, and the foster father believed that the children would be in danger if returned to the parents. The Department's plan for the children was termination of the parents' rights and adoption by the current placement. The conservatorship caseworker, the CASA volunteer, and the children's attorney ad litem all believed that termination of the mother's parental rights would be in the children's best interest.

Based upon the evidence presented in this case, we defer to the trial court's finding as to the children's best interest. *See C.H.*, 89 S.W.3d at 27. We hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's parental rights would be in each of the children's best interest. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the children's desires, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of

those involved, the plans for the children by the Department, the mother's continued use of methamphetamine, the conditions of the home, the occurrence of domestic violence, and the stability of the placement, we hold that the evidence is legally and factually sufficient to support the finding that termination of the mother's parental rights is in the best interest of the children. *See id.* We cannot hold that the finding as to best interest is not supported by clear and convincing evidence. We overrule the mother's fifth issue.

In his sole issue on appeal, the father complains of the trial court's admission into evidence of more than eighty photos depicting the conditions of the parents' home. The record reflects that, at the beginning of the de novo hearing, the Department offered various exhibits into evidence, including the photos about which the father complains. The assistant county attorney, who was counsel for the Department, informed the trial court that all of these exhibits had been offered at the first trial, were in the case file, and were made a part of the record. The parents' attorneys objected to the admission of the photos based on the lack of predicate. *See* TEX. R. EVID. 901(a), (b)(1). The assistant county attorney explained that these exhibits had been authenticated in the trial conducted by the associate judge and had been admitted as part of the record. The trial court overruled the parents' objection.

In a de novo hearing before the referring court in a parental termination case, the judge may "consider the record from the hearing before the associate judge." FAM. § 201.015(c). Although the reporter's record from the hearing conducted by the associate judge was not offered into evidence at the de novo hearing, counsel indicated that the complained-of exhibits had been admitted into evidence and, thus, would be included in such a record. Additionally, the Department's caseworker subsequently testified at the de novo hearing about the conditions of the parents' home—conditions that the caseworker personally observed and of which she took

photos. The father also testified at the de novo hearing and authenticated the exhibits as being photos taken of the home in which the parents and the children had lived. *See* TEX. R. EVID. 901(a), (b)(1). The testimony of the caseworker and the father cured any concern about the original lack of predicate for the admission of the photos and rendered any error in the admission of the photos harmless. *See James v. State*, 102 S.W.3d 162, 175 (Tex. App.—Fort Worth 2003, pet. ref'd); *Davis v. State*, 687 S.W.2d 78, 82 (Tex. App.—Dallas 1985, pet. ref'd). Accordingly, we overrule the father's sole issue on appeal.

The order of the trial court is affirmed.


JIM R. WRIGHT
SENIOR CHIEF JUSTICE


April 16, 2020

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.