

# IN THE
# TENTH COURT OF APPEALS

## No. 10-20-00190-CV

## IN THE INTEREST OF N.W.G. & L.S., CHILDREN

### From the 413th District Court
### Johnson County, Texas
### Trial Court No. DC-D201900018

## MEMORANDUM OPINION

Haley W. appeals from the trial court's order terminating her parental rights to her children, N.W.G. and L.S.[1] After hearing all the evidence, the trial court found by clear and convincing evidence that Haley (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endanger the children, (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangers the children, (3) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children,

---

[1] Cody is the father of N.W.G., and Zach is the father of L.S. Neither Cody nor Zach are a party to this appeal.

and (4) had been the cause of L.S. being born addicted to alcohol or a controlled substance. TEX. FAM. CODE ANN. § 161.001 (b) (1) (D) (E) (O) (R)(West Supp. 2019).  The trial court further found by clear and convincing evidence that termination was in the best interest of the children. TEX. FAM. CODE ANN. § 161.001 (b) (2) (West Supp. 2019).  We affirm.

### STANDARD OF REVIEW

In five issues, Haley argues that the evidence is legally and factually insufficient to support the trial court's findings on each of the grounds for termination and the finding on best interest.  Only one predicate act under section 161.001 (b) (1) is necessary to support a judgment of termination in addition to the required finding that termination is in the child's best interest.  *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).  In conducting a legal sufficiency review in a parental termination case:

> [A] court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.  To give appropriate deference to the factfinder's conclusion and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so.  A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible.  This does not mean that a court must disregard all evidence that does not support the finding.  Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

*In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)) (emphasis in *J.P.B.*).

In a factual sufficiency review,

> [A] court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.... [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

*In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)) (internal footnotes omitted) (alterations added).

### ENDANGERING THE CHILDREN

Sections 161.001 (b) (1) (D) and (E) both require a finding of endangerment. To endanger means to expose to loss or injury, to jeopardize. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The specific danger to a child's physical or emotional well-being need not be established as an independent proposition, but it may be inferred from parental misconduct. *Boyd,* 727 S.W.2d at 533.

When termination of parental rights is based on section D, the endangerment analysis focuses on the evidence of the child's physical environment, although the environment produced by the conduct of the parents bears on the determination of

whether the child's surroundings threaten his or her well-being. *In the Interest of E.M.*, 494 S.W.3d 209, 221 (Tex. App. —Waco 2015, pet. den'd). Section D permits termination if the petitioner proves parental conduct caused a child to be placed or remain in an endangering environment. *Id*. It is not necessary that the parent's conduct be directed toward the child or that the child actually be injured; rather, a child is endangered when the environment creates a potential for danger which the parent is aware of but disregards. *Id*. Conduct that demonstrates awareness of an endangering environment is sufficient to show endangerment. *Id*. In considering whether to terminate parental rights, the court may look at parental conduct both before and after the birth of the child. *Id*. Section D permits termination based upon only a single act or omission. *In the Interest of E.M.*, 494 S.W.3d at 222.

Under subsection 161.001 (b) (1) (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *Id*. Under subsection (E) it can be either the parent's conduct or the conduct of the person with whom the parent knowingly leaves the child that endangers the physical or emotional well-being of the child. In either instance it is thus the direct result of the parent's conduct that results in the termination of the parental rights. It is not necessary, however, that the conduct be directed at the child or that the child actually suffer injury. *In the Interest of E.M.*, 494 S.W.3d at 222.

Because the evidence pertaining to subsections 161.001 (b) (1) (D) and (E) is interrelated, we may conduct a consolidated review. *In Interest of M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App. —Fort Worth 2009, no pet.).

The record shows that Haley used marijuana while pregnant with L.S., and that L.S. tested positive at birth for marijuana. A mother's use of illegal drugs during pregnancy may constitute conduct that endangers the physical and emotional well-being of a child. *In the Interest of K.A.C.*, 594 S.W.3d 364, 373 (Tex. App. — El Paso 2019, no pet.).

Haley allowed N.W.G. to go stay with her father, Cody, for an extended period of time. While in Cody's care, N.W.G. tested positive for methamphetamines. Haley knew that there were people living in the home who had an extensive history of drug use. Haley felt that the home was safe for N.W.G. to stay there. Evidence of a parent's drug use, or evidence that another parent allowed a child to be around a parent or other persons using drugs, can support the conclusion that the child's surroundings endanger her physical or emotional well-being under subsection (D) and can qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being under subsection (E). *In the Interest of C.V. L.*, 591 S.W.3d 734, 751 (Tex. App. —Dallas 2019, pet. den'd).

Jenny Gilbreath, with the Texas Department of Family and Protective Services, testified that she became involved with the family over concerns of Haley caring for the children. Gilbreath testified that there were no safe sleeping arrangements for the

children in the home and that the home was unsafe for the children. Gilbreath further testified that there was domestic violence in the home and described an incident with a loaded rifle. Haley and Zach's mother fought over the loaded rifle, and the children were in the middle of the altercation. Gilbreath felt that the children were in physical danger.

Chelsea Michael, with the Texas Department of Family and Protective Services, also described domestic violence in the home. Michael said that Haley told her there had been domestic violence in the home for several days before the incident with the loaded rifle. Michael also testified that Haley has significant mental health issues. Haley has suicidal ideations and has attempted suicide in the past. Michael stated that Haley is prescribed medication for her mental illness, but she does not take the medications as prescribed. Michael counted Haley's pills less than a month before the final hearing and testified that Haley is not taking the medication as prescribed. A history of noncompliance with medication to treat mental illness can be considered as endangering a child's well-being. *See In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App. —Houston [14th Dist.] 2003, no pet.).

We find that the evidence is legally and factually sufficient to support the trial court's findings that Haley knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endanger the children, and engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangers the children. TEX. FAM. CODE ANN. § 161.001 (b) (1) (D) (E) (West Supp. 2019). We

overrule the first and second issues on appeal. Only one predicate act under section 161.001 (b) (1) is necessary to support a judgment of termination in addition to the required finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Because we find that the evidence is sufficient under Section 161.001 (b) (1) (D) & (E), we have addressed the concerns of protecting Haley's due process and due course of law rights. *See In the Interest of N.G.*, 577 S.W.3d 230 (Tex. 2019). We need not address the third and fourth issues on appeal.

## BEST INTEREST

In the fifth issue, Haley argues that the evidence is legally and factually insufficient to support the trial court's finding that termination is in the children's best interest. In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex.1976); *In re S.L.*, 421 S.W.3d 34, 38 (Tex. App. —Waco 2013, no pet.). The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *In re S.L.*, 421 S.W.3d at 38. The

goal of establishing a stable permanent home for a child is a compelling state interest. *Id*. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *Id*.

N.W.G was approximately four years-old at the final hearing, and L.S. was not yet two years-old. Michael testified that N.W.G. indicated that she wants to remain in her current foster placement as her "forever home." N.W.G. told her counselor that the previous homes where she lived were "dirty" and "scary." The counselor testified that the children need a stable home with parents who can give them the attention they need and bond with them. There was testimony that Haley struggled to interact with the children during visitations and that N.W.G. had to try to entertain Haley. Haley fell asleep during one visitation.

Haley has mental health issues, and she does not take her prescribed medication as directed. Haley used marijuana while pregnant with L.S., and L.S. tested positive for marijuana at birth. Haley exposed the children to domestic violence and physical danger while they were in her care.

Michael testified that Haley participated in parenting classes, but she was unable to utilize those skills in parenting her children. Michael stated that Haley does not have the skills to bond with the children and that Haley's mental health is unstable.

Michael further testified that Haley is financially unstable and has not had consistent stable housing. Haley has lived in five different residences since the case

began. She has lived with various friends and her current boyfriend's parents. Haley and her boyfriend now have their own apartment where they have lived for three months. Michael testified that the apartment did not have beds for the children, clothes for the children, or toys for the children. Haley testified that she is employed, but she never provided proof of employment to Michael.

Haley testified that she is employed and works nights. Her boyfriend also works nights. They plan to alternate their work schedules so that one will be home with the children. Haley said that her boyfriend will be the primary caretaker of the children during the week. Haley testified that she is currently working with MHMR and that she is able to apply the parenting skills she learned in her classes.

There was testimony that the children's needs are met in their current placement. N.W.G. receives counseling and is making progress in dealing with her anxiety. The children's educational needs are met, and they participate in appropriate activities. The foster home is stable with no safety concerns.

We find that the evidence is legally and factually sufficient to support the trial court's finding that termination is in the best interest of the children. We overrule the fifth issue on appeal.

## CONCLUSION

We affirm the trial court's judgment.

JOHN E. NEILL
 Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Neill
Affirmed
Opinion delivered and filed October 28, 2020
[CV06]

