

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00412-CV

**IN THE INTEREST OF L.A.C.**, A.I.A.C., S.A.C., and H.A.C., Children

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2019-PA-00887
Honorable Linda Rodriguez, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
                Beth Watkins, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: February 3, 2021

AFFIRMED

In this parental rights termination case, the trial court terminated Mom's parental rights to her children L.A.C., A.I.A.C., S.A.C., and H.A.C.[i]  Mom challenges the legal and factual sufficiency of the evidence for the trial court's findings on statutory grounds and best interest of the children, and argues, inter alia, that the trial court's termination order should be reversed.

Having reviewed the evidence, we conclude it was legally and factually sufficient.  We affirm the trial court's order.

## BACKGROUND

After ongoing issues and reports of neglect, the Department of Family and Protective Services petitioned for the removal of Mom's children, L.A.C., A.I.A.C, S.A.C., and H.A.C.  The

---

[i] We use aliases to protect the children's identities.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

Department noted concerns about the family's living conditions, the children's access to unknown medications, and Mom's drug use. Mom declined to participate in a family safety plan with the Department, which precipitated removal of L.A.C., A.I.A.C., S.A.C., and H.A.C.

Over the course of Mom's case, the Department attempted to engage Mom with services. Following removal of the children, the Department scheduled visitation with Mom. Mom began both but completed neither. In the last six months before trial, Mom could have attended twenty visits, but only attended five: four in person and one virtually.

At the trial to terminate Mom's parental rights, Mom was not present. She informed her attorney by text that she was in the hospital. Mom's attorney requested a continuance, but the Department objected based on past evidence of Mom's malingering. Noting that this trial was the fourth merits setting in the case, the trial court denied Mom's lawyer's request to continue, and the trial commenced. Mom later made an appearance and testified on her own behalf.

At the conclusion of trial, Mom's caseworker and the children's guardian ad litem recommended termination of Mom's rights due to Mom's lack of progress toward becoming a suitable parent and based on the children's best interests. The children had been placed with their paternal grandmother, and they had expressed a desire to remain there. Mom's attorney objected to termination of Mom's parental rights, citing a strong bond between Mom and the children. But the trial court found by clear and convincing evidence that Mom's course of conduct met the grounds in Family Code section 161.001(b)(1)'s subsections (D), (E), (N), (O), and (P), and that terminating Mom's parental rights was in each child's best interest.

On appeal, Mom challenges the sufficiency of the evidence.

**EVIDENCE REQUIRED, STANDARDS OF REVIEW**

The evidentiary standards[1] the Department must meet and the statutory grounds[2] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[3] and factual[4] sufficiency standards of review. We apply them here.

**STATUTORY GROUNDS FOR TERMINATING MOM'S PARENTAL RIGHTS**

In her first issue, Mom asserts that the evidence was legally and factually insufficient to support the trial court's statutory grounds findings. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), and (P). The Department argues the evidence was sufficient to support the trial court's finding on each ground.

**A.      Statutory Ground Finding Required**

A single statutory ground finding, when accompanied by a best interest of the child finding, is sufficient to support a parental rights termination order. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.). But even though only one predicate ground may support the trial court's order of termination, due process requires that we address any appellate issue regarding the sufficiency of the evidence of a trial court's finding under either (D) or (E) because a termination finding under subsection (D) or (E) may serve as the basis for a future termination of parental rights proceeding. *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019). We begin with ground (D). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D).

**B.      Section 161.001(b)(1)(D)**

*1.      Subsection (D)'s Provisions*

Under subsection (D), a parent's rights may be terminated if, before the child is removed, *see In re R.S.-T.*, 522 S.W.3d at 109 (relevant period), the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or

emotional well-being of the child," TEX. FAM. CODE ANN. § 161.001(b)(1)(D).  In the context of the statute, "'endanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

"[E]ndangerment can be exhibited by both actions and failures to act." *Lumpkin v. Dep't of Family & Protective Servs.*, 260 S.W.3d 524, 528 (Tex. App.—Houston [1st Dist.] 2008, no pet.).  "[A] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d at 109 (alteration in original) (quoting *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).  "[A] single act or omission" may support terminating a parent's rights under subsection (D).  *Id.* (citing *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied)).  "Further, a fact-finder may infer from past conduct endangering the well-being of a child that similar conduct will recur if the child is returned to the parent." *In re D.J.H.*, 381 S.W.3d 606, 613 (Tex. App.—San Antonio 2012, no pet.).

### 2. Evidence of Conditions or Surroundings

From the last referral prior to removal, Mom reportedly had no stable housing, and the family was sleeping in Mom's truck.  Even when Mom was staying in a hotel room with her children prior to removal, she was sharing the room with her reported boyfriend, who was seen in a Facebook video taking drugs.  Another Facebook video showed the children with this same man. Mom testified that the man in the video was not her boyfriend, but rather someone sharing a hotel room with her and a friend.  She testified that she reported him and removed her children from the situation, but no other testimony supported her account.

### 3. Sufficient Evidence under Subsection (D)

Given the testimony, the trial court could have concluded that the children's exposure to drugs in their shared hotel room was a danger.  *See Boyd*, 727 S.W.2d at 533 (exposing to injury).

We conclude the evidence of Mom's course of conduct was legally and factually sufficient for the trial court to have found by clear and convincing evidence that, before the children were removed, Mom knowingly allowed the children to live in conditions and surroundings which endangered their physical and emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *Lumpkin*, 260 S.W.3d at 528.

**C.      Section 161.001(b)(1)(E)**

A parent's rights to their child may be terminated if, inter alia, the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b); *In re R.S.-T.*, 522 S.W.3d at 109.

For a parent to endanger a child, "it is not necessary that the [parent's] conduct be directed at the child or that the child actually suffers injury." *Boyd*, 727 S.W.2d at 533. "[R]ather, a child is endangered when the environment or the parent's course of conduct creates a potential for danger which the parent is aware of but disregards." *In re R.S.-T.*, 522 S.W.3d at 110 (quoting *In re S.M.L.*, 171 S.W.3d at 477).

A parent's drug use and pattern of domestic violence are factors which may be considered on the question of endangerment. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) (drug use); *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (domestic violence).

A parent's placing a child in a potentially unsafe environment is also evidence of endangerment. *See In re R.S.-T.*, 522 S.W.3d at 110 ("[A] child is endangered when the environment . . . creates a potential for danger which the parent is aware of but disregards.").

**D.      Mom's Course of Conduct Endangering the Child**

The trial court heard testimony regarding Mom's conduct that endangered L.A.C., A.I.A.C., S.A.C., and H.A.C, including domestic violence and drug abuse.

### 1.    *Mom's Pattern of Domestic Violence Relationships*

Mom's pattern of domestic violence relationships began with the children's Dad, who was convicted and sentenced for assaulting Mom.  The next relationship that Mom admitted to being in was with a man who she claimed forcibly injected her with drugs.  *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.) ("[A]busive or violent conduct by a parent . . . may produce an environment that endangers the physical or emotional well-being of a child."); *see also Boyd*, 727 S.W.2d at 533 (noting that a parent's violence need not be directed at the child or the child injured to constitute endangering the child).

### 2.    *Mom's Drug Use*

Mom struggled with drug abuse and refused to admit it.  When Mom tested positive for drug use, she tried to explain away the validity of the result.  Mom denied using drugs, did not comply with treatment, would not test when asked, and made many excuses about not getting tested.  Nevertheless, she had admitted to being under the influence of drugs to her children's daycare staff, and one of Mom's psychiatrists attributed Mom's warped perception of reality to substance-induced psychosis, specifically methamphetamines, and recommended that she receive in-patient care and therapy to treat her stimulant use disorder.  *See In re S.R.*, 452 S.W.3d 351, 361–62 (Tex. App.—Houston [14th Dist.], pet. denied) ("Continued illegal drug use after a child's removal is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct."); *see also In re J.O.A.*, 283 S.W.3d at 345 (recognizing that a parent's drug abuse may endanger the child); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.) ("A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent."); *In re J.D.*, 436 S.W.3d 105, 119 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("[T]he fact finder may permissibly infer that

a parent's future conduct may be measured by recent past conduct as it relates to the same or a similar situation.").

### E.    Sufficient Evidence

The evidence pertaining to Mom's drug abuse and domestic violence relationships shows a course of conduct from which the trial court could have found that Mom endangered her children's physical and emotional well-being. *See Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 618 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see also In re J.O.A.*, 283 S.W.3d at 345 (drug use); *In re J.I.T.P.*, 99 S.W.3d at 845 (domestic violence).

We conclude the trial court could have "reasonably form[ed] a firm belief or conviction about the truth of the [Department's] allegations." *See In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). Therefore, the evidence was sufficient to support the trial court's finding under subsection 161.001(b)(1)(E). *See id.*; *Walker*, 312 S.W.3d at 618.

Because only a single statutory ground finding is needed to support an order terminating a parent's rights to a child, *In re A.V.*, 113 S.W.3d at 362, we need not address the other statutory grounds, *see In re R.S.-T.*, 522 S.W.3d at 111. We overrule Mom's first issue.

### BEST INTERESTS OF THE CHILDREN

In her second issue, Mom argues the evidence was insufficient to support the trial court's finding that terminating her parental rights was in her children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

The Family Code statutory factors[5] and the *Holley* factors[6] for best interests of the children are well known. Applying the applicable standard of review and statutory and common law best interest factors, we examine the evidence pertaining to the best interest of each child. The same evidence we considered in the statutory grounds reviews may also be probative in our best interests of the children review. *See In re C.H.*, 89 S.W.3d at 28; *Walker*, 312 S.W.3d at 618.

## A.     Mom's Course of Conduct

Mom tested positive for methamphetamine drugs and could not admit to having a drug problem. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (C), (D), (H)).  Mom was evicted from SAMMinistries, an organization collaborating with the Department to offer Mom services, in part because she did not take her children to school and engage with services.  *See* TEX. FAM. CODE ANN. § 263.307(b)(10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)).  Mom was deemed to have a warped sense of reality after two separate psychiatric evaluations, attributed by one doctor solely to drug use, and by another to either drug use, bipolar disorder, or some other serious mental health problem.  *See* TEX. FAM. CODE ANN. § 263.307(b)(6), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)).

## B.     Children's Placement

Since removal, the children have lived with their paternal grandmother who wants to adopt them.  *See Holley*, 544 S.W.2d at 372 (factors (F), (G)).  The grandmother is taking good care of the children and ensuring that their needs are met.  *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G)).  The grandmother's home is safe and stable.  *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G)).  The children are bonded to their grandmother, and they are thriving. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G)).

## C.     Ad Litem's Recommendation

The children's ad litem noted her concerns about Mom's lack of progress in the case, her need to deal with her mental health problem, as well as her persistent substance abuse issues.  She also noted concerns about Mom's lack of stable employment and her inability to follow through

with a regular or increased visitation schedule. The ad litem stated it was in the children's best interests for Mom's parental rights to be terminated and for the children to remain with their paternal grandmother.

## D.     Legally, Factually Sufficient Evidence

Having reviewed the evidence, we conclude the trial court could have "reasonably form[ed] a firm belief or conviction" that it was in the children's best interests for Mom's parental rights to be terminated. *See In re J.L.*, 163 S.W.3d at 85; *In re H.R.M.*, 209 S.W.3d at 108 (citing *In re C.H.*, 89 S.W.3d at 25). The evidence was legally and factually sufficient to support the trial court's best-interests-of-the-children findings. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We overrule Mom's second issue.

### CONCLUSION

The evidence of Mom's drug use, domestic violence relationships, and inability to pursue her children's best interests, for example, by taking them to school, was sufficient to support the trial court's findings under subsection 161.001(b)(1)(D) and (E) and its findings on best interests of the children. Because the evidence was sufficient to support the trial court's order terminating her parental rights, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[1] Clear and Convincing Evidence. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code and that terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[2] Statutory Grounds for Termination. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b). Here, the trial court found Mom's course of conduct met the following criteria or grounds:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

. . . .

(N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
    (i)    the department has made reasonable efforts to return the child to the parent;
    (ii)   the parent has not regularly visited or maintained significant contact with the child; and
    (iii)  the parent has demonstrated an inability to provide the child with a safe environment;

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child; [and]

(P) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and:
    (i)    failed to complete a court-ordered substance abuse treatment program; or
    (ii)   after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance.

*Id.* § 161.001(b)(1).

[3] Legal Sufficiency. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.*

[4] Factual Sufficiency. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

[5] Statutory Factors for Best Interest of the Child. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:
    (1)    the child's age and physical and mental vulnerabilities;
    (2)    the frequency and nature of out-of-home placements;
    (3)    the magnitude, frequency, and circumstances of the harm to the child;
    (4)    whether the child has been the victim of repeated harm after the initial report and intervention by the department;
    (5)    whether the child is fearful of living in or returning to the child's home;
    (6)    the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;
    (7)    whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;
    (8)    whether there is a history of substance abuse by the child's family or others who have access to the child's home;
    (9)    whether the perpetrator of the harm to the child is identified;
    (10)  the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;
    (11)  the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;
    (12)  whether the child's family demonstrates adequate parenting skills; . . . and
    (13)  whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[6] *Holley* Factors. In *Holley v. Adams*, the Supreme Court of Texas identified the following factors courts may use to determine the best interest of a child:

(A)  the desires of the child;

(B)  the emotional and physical needs of the child now and in the future;

(C)  the emotional and physical danger to the child now and in the future;

(D)  the parental abilities of the individuals seeking custody;

(E)  the programs available to assist these individuals to promote the best interest of the child;

(F)  the plans for the child by these individuals or by the agency seeking custody;

(G)  the stability of the home or proposed placement;

(H)  the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)  any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).