# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00466-CV

---

**M. S., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

### FROM THE 274TH DISTRICT COURT OF HAYS COUNTY
### NO. 24-0506, THE HONORABLE MELISSA MCCLENAHAN, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

M.S. ("Father") appeals from the trial court's order terminating his parental rights to his children Ana, Joshua, and Carlos following a bench trial.[1]  Father challenges the legal and factual sufficiency of the evidence to support the trial court's statutory-predicate findings supporting termination under Texas Family Code § 161.001(b)(1)(D) and (E).  For the following reasons, we affirm the trial court's order of termination.

## BACKGROUND

Father and Mother were married and shared three children:  Ana, born in 2009, Joshua, born in 2011, and Carlos, born in 2018.  On February 23, 2024, the City of Kyle police department responded to a welfare check at the family's home after Father called his brother to say he had hit Mother with a bat and, referring to his family, "they are all dead."  Officers found Mother

---

[1] We refer to appellant as Father and his children by aliases.  *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8.  We refer to the children's mother, who is deceased, as Mother.

in bed unresponsive with traumatic head injuries, and she died at the hospital from her injuries later that day. The children were uninjured. After Father was incarcerated, the Department removed the children from his custody and placed them with their maternal aunt.

On February 26, the Department filed an original petition seeking termination of Father's parental rights to the children. In addition to outlining the circumstances described above, the affidavit in support of the children's emergency removal stated that Father "had admitted to beating the mother which caused her death and had planned on killing the entire family but was not 'strong enough.'" The affidavit also referenced a validated allegation of sexual abuse against Father made by a cousin in March 2022. Based on Mother's death and Father's incarceration, the Department also sought a no-contact order between the children and Father.

The Department moved for a finding of aggravated circumstances based on the circumstances of the children's removal—namely that Father had expressed his intent to kill the children and was charged with Mother's murder, which he allegedly carried out with the children present. *See* Tex. Fam. Code § 262.2015(a), (b). It requested that the trial court waive the service plan requirement and relieve the Department from its duty to make reasonable efforts to return the children to Father. *Id.* § 262.2015(a). It also sought an accelerated trial. *Id.* The trial court granted the motion, finding that Father had subjected the children to aggravating circumstances under Texas Family Code sections 262.2015(b)(3)(H) (injury to a child, elderly individual, or disabled individual) and 262.2015(b)(3)(I) (abandoning or endangering a child, elderly individual, or disabled individual). Father sought mandamus relief from that order from this Court, which we denied. *In re M.S.*, No. 03-24-00206-CV, 2024 WL 1662033, at *1 (Tex. App.—Austin Apr. 18, 2024, orig. proceeding) (mem. op.).

2

The parties waived their right to a jury trial, and the trial proceeded before the bench on June 21. Four witnesses testified: Officer Mark Hamilton, a City of Kyle police officer who responded to the welfare check; Frank Roe, the children's CPS caseworker; Clark Beach, the court appointed special advocate (CASA) guardian ad litem for Joshua and Carlos; and Rose Tempfer, the CASA guardian ad litem for Ana. Father attended trial virtually but did not testify.[2]

Officer Hamilton testified that he was one of the police officers who responded to a "welfare concern regarding a female possibly being hurt or injured or killed by . . . a male" and that "possibly there were some children in danger." After finding Father detained in the patrol unit, Office Hamilton reported he observed Father had "a small laceration over one of his eyes," had blood on his clothing and hands, and was "highly emotional."

Officer Hamilton testified that he transported Father to the hospital for medical clearance, then to the Hays County law enforcement center, where Father made several statements to him. Specifically, Father relayed he did not live in the house but had been visiting his wife and children that evening. Officer Hamilton stated Father "went on to describe an assault on his wife, including a club-like object, in which he went into great detail describing which hand he used, approximately how many times he struck her, and various details along those lines." When asked if Father admitted any intention to kill his wife, Officer Hamilton responded, "I believe he stated multiple times whether she lived or died made no difference to him." And when asked if Father discussed his intent to kill anyone else, Officer Hamilton stated that Father "made some statements that, basically, if he and his wife were unable to care for the children, that he didn't want them going any other places. And he made some statements about possibly killing the children." Officer

---

[2] The parties agreed to Father's virtual participation, and Father's counsel expressly waived any issue regarding his virtual attendance.

3

Hamilton also reported that to his knowledge, "the youngest child was in bed with the mom" during the assault. Officer Hamilton described Father's demeanor while he made these statements as "relatively calm" and noted that Father had expressed "concern[s] for [the children's] well-being."

Mr. Roe testified he has been the caseworker on this case since the children first came into the Department's custody. He stated he is familiar with the children because he visits them at least once a month to offer services, noting that the children are in therapy, which has been helping them. Mr. Roe opined that "at least the two oldest children are coping the best way they can," "still show a little anger towards their father" and "having confusion about what's happening" but "are getting help with their therapist" and "are very strong and holding up." In discussing Carlos, Mr. Roe stated "he is still very young and doesn't know all what's happening right now," noting that he has been having "behavioral issues . . . because of this whole situation." Mr. Roe observed that "the family is very attentive," but the children "still need long-term help." He agreed that the children "know fully well that their father murdered their mother," and it was in the children's best interest to have no communication with Father.

Mr. Roe described the children as placed "in a loving environment" with their maternal aunt, where they regularly see their maternal grandmother and other maternal relatives. He reported the Department's permanency plan for the children is relative adoption by their maternal aunt, attested that this was in the children's best interest, and noted that the children want to be adopted by their maternal aunt, who also wants to adopt the children.

Mr. Beach, the CASA guardian ad litem for Joshua and Carlos, testified that he visits with the boys once a month. He reported that the boys indicated they would like to stay with their aunt and agreed that termination of Father's parental rights is in their best interest, noting that Father "is currently incarcerated and won't be able to care for the children, and their mother is

4

deceased." Likewise, Mr. Beach opined it would be in the children's best interest for Father's parental rights to be terminated so they could "be adopted by their placement," where all their needs are being met.

Ms. Tempfer, the CASA guardian ad litem for Ana, testified that she visits with Ana once a month. She noted that Ana is "a very bright student" with no education issues but "will continue to need trauma therapy for a while." Regarding Ana's placement with her aunt, Ms. Tempfer attested Ana is "comfortable, at ease where she is" and "would like to stay there," which she agreed was in Ana's best interest. Ms. Tempfer stated she felt termination of Father's parental rights was in Ana's best interest because he "is incarcerated," he "has a pending sexual assault case," and she did not believe "he is in a position to take care of [the children]." She also agreed one of her concerns is that Father is "charged with the murder of their mother" and attested Ana told her "she does not want any contact with her father."

After closing statements by Father, the Department, and the children's guardian ad litem, the trial court found that clear and convincing evidence supported termination of Father's parental rights under section 161.001(b)(1)(D) and (E) and that termination is in the best interest of the children.

On July 3, the trial court signed an order terminating Father's parental rights to the children under Texas Family Code sections 161.001(b)(1)(D) and (E). The trial court also found by clear and convincing evidence that termination of the parent-child relationship between Father and the children is in the children's best interest under section 161.001(b)(2), and it appointed the Department as the children's managing conservator. *See* Tex. Fam. Code § 161.207(a). Father appeals.

**ANALYSIS**

Father challenges the legal and factual sufficiency of the evidence supporting the trial court's findings of statutory grounds for termination under subsections (D) and (E). As to subsection (D)—that Father knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the children's physical or emotional well-being— Father contends the only testimony that supports that statutory finding is Officer Hamilton's "improperly admitted testimony" regarding Father's statements. As to subsection (E)—that Father engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the children's physical or emotional well-being—Father maintains he did not demonstrate a course of conduct that supports a finding under that statutory ground.[3]

"To terminate parental rights, the factfinder must find by clear and convincing evidence that (1) at least one of the termination grounds set forth in Section 161.001(b)(1) or other sections of the Texas Family Code applies, and (2) termination is in the best interest of the child." *In re C.E.*, 687 S.W.3d 304, 308 (Tex. 2024). "Clear and convincing evidence 'will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* (quoting Tex. Fam. Code § 101.007). This "higher standard of proof" is required "[b]ecause the termination of parental rights implicates fundamental interests." *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014).

An appellate court conducting a legal sufficiency review considers all evidence in the light most favorable to the trial court's finding, as well as any undisputed contrary evidence, to determine whether a reasonable factfinder could have formed a firm belief or conviction that it

---

[3] Father does not challenge the trial court's best-interest finding.

was true. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). "Courts 'must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so,' but courts 'should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.'" *In re C.E.*, 687 S.W.3d at 308 (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). In a factual sufficiency review, the appellate court considers and weighs disputed evidence contrary to the trial court's findings against the evidence in favor of the finding. *In re A.C.*, 560 S.W.3d at 631. "Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.* However, appellate courts "provide due deference to the decisions of the factfinder who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses." *In re A.B.*, 437 S.W.3d at 503.

Subsections (D) and (E) both require proof of endangerment. *In re S.B.*, 597 S.W.3d 571, 583 (Tex. App.—Amarillo 2020, pet. denied). A parent's endangering conduct under subsection (D) and (E) "need not 'be directed at the child or that the child actually suffers injury.'" *In re R.R.A.*, 687 S.W.3d 269, 227 (Tex. 2024) (quoting *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). "Instead, endangerment encompasses a larger array of conduct that exposes a child to loss or injury or jeopardizes the child." *Id.* (cleaned up). "A factfinder may infer endangerment from 'a course of conduct' that presents substantial risks to the child's physical or emotional well-being—the focus on grounds (D) and (E)." *Id.* These risks "can be developed by circumstances arising from and surrounding a parent's behavior"; however, they "must be more than 'a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment.'" *Id.* (quoting *Boyd*, 727 S.W.2d at 533).

Subsection (D) focuses on "the child's surroundings and environment rather than parental misconduct, which is the subject of subsection (E)." *In re S.B.*, 597 S.W.3d at 583 (citing *Doyle v. Texas Dep't of Protective & Regul. Servs.*, 16 S.W.3d 390, 394 (Tex. App.—El Paso 2000, pet. denied)). "The factfinder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent." *Id.* Subsection (E) focuses on the parent's conduct evidenced by his actions or failure to act. *Id.* (citing *In re M.J.M.L.*, 31 S.W.3d 347, 350–51 (Tex. App.—San Antonio 2000, pet. denied)). Though the conduct does not need to be directed at the child, termination under subsection (E) requires more than a single act or omission. *Id.* at 583–84. "Evidence as to how a parent has treated another child or spouse is relevant regarding whether a course of conduct under section 161.001(1)(E) has been established." *Walker v. Texas Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Father contends "the only inculpatory evidence" against him on subsection (D) grounds were his own statements that he maintains were improperly introduced. Specifically, Father argues the trial court erred by overruling his objection that Officer Hamilton's testimony regarding Father's statements was not the best evidence under Texas Rule of Evidence 1002, because, he argues, the "best evidence" would have been the audio or video recording of his statements to Officer Hamilton.[4] Father also maintains the trial court erred by overruling his objection to a purportedly speculative answer by Mr. Roe in response to whether the two older children "actually 'knew' the incident occurred"—i.e., whether Mr. Roe agreed the children knew

---

[4] At trial, Father's counsel acknowledged he had not requested those recordings through discovery. Father's counsel also urged these statements should be omitted based on the rule of optional completeness. *See* Tex. R. Evid. 107. However, Father does not maintain this argument on appeal.

"that their father murdered their mother." Finally, Father asserts that the trial court "repeatedly admitted hearsay testimony" over his objections, pointing to several points in the record in which witnesses testified to the children's desires to be adopted by their maternal aunt.

"Evidentiary rulings are committed to the trial court's sound discretion." *Bay Area Healthcare Grp. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam). "Even if a trial court errs by improperly admitting evidence, reversal is warranted only if the error probably caused the rendition of an improper judgment." *Id.* (citing Tex. R. App. P. 61.1(a)). An appellant seeking reversal on purportedly improperly admitted evidence must demonstrate, in light of the entire record, "that the judgment turns on the particular evidence admitted." *Id.*

The best-evidence rule provides "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or other law provides otherwise." Tex. R. Evid. 1002. However, the best-evidence rule is inapplicable here because the Department did not seek to prove the contents of a recording. *Id.*; *see Chennault v. Chennault*, No. 12-17-00295-CV, 2018 WL 992115, at *3 (Tex. App.—Tyler Feb. 21, 2018, no pet.) (mem. op.) (finding that best-evidence rule was inapplicable when affidavit referred to findings in prior case but did not attempt to prove contents). Officer Hamilton's testimony was instead elicited to establish what Father told him about Mother's assault and the circumstances of the children's removal. Thus, Father's argument that the trial court abused its discretion by permitting Officer Hamilton's testimony despite his best-evidence rule objection is inapposite. *Cf. Ritcherson v. State*, 476 S.W.3d 111, 132 n.10 (Tex. App.—Austin 2015), *aff'd*, 568 S.W.3d 667 (Tex. Crim. App. 2018) (noting that Rule 1002 does not require admission of video recording when participant to recorded conversation is called to testify) (citing *Matute v. State*, No. 03-13-00601-CR,

2014 WL 6845585, at *3–5 (Tex. App.—Austin Nov. 26, 2014, pet ref'd) (mem. op., not designated for publication)).

As to the remaining evidentiary objections, Father has not demonstrated how the trial court's decision to permit witnesses' testimony regarding the children's desire to be adopted by their maternal aunt and Mr. Roe's testimony regarding the children's understanding of Mother's death was harmful error. That is, Father has not established that, considering the entire record—including Officer Hamilton's testimony about Father's statements—"the judgment turns on the particular evidence admitted" regarding the children's desires or whether the children understood the cause of Mother's death. *McShane*, 239 S.W.3d at 234. In sum, Father has not established that any of the trial court's evidentiary rulings were an abuse of discretion or harmful error.

Given the evidence here, a reasonable factfinder could have formed a firm belief or conviction that Father subjected the children to endangerment under subsection (D) and (E). Officer Hamilton's testimony established Father's description of his violent attack on Mother with all three children in the home, including the youngest child in bed with Mother during the attack.[5] "Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment." *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *see also In re L.D.C.*, 622 S.W.3d 63, 71 (Tex. App.—El Paso 2020, no pet.) ("[C]onduct that subjects a child to the probability of abandonment 'because a parent is jailed endangers both the physical and emotional well-being of the child.'" (quoting *Walker*, 312 S.W.3d at 617)). To the extent that termination under subsection (E) requires an ongoing course of conduct

---

[5] Unlike other parental-rights termination cases involving similar circumstances, Father has not yet been convicted of a crime in connection with Mother's death. *Cf. In re E.M.N.*, 221 S.W.3d 815, 824 (Tex. App.—Fort Worth 2007, no pet.).

extending beyond Father's cumulative actions the day of Mother's assault, the testimony regarding evidence of Father's pending sexual assault case was sufficient to establish it. *See D.N. v. Texas Dep't of Family & Protective Servs.*, No. 03-15-00658-CV, 2016 WL 1407808, at *2 (Tex. App.—Austin Apr. 8, 2016, no pet.) (mem. op.) ("A parent's criminal activity or incarceration can also constitute endangerment under subsection (E), especially if the parent engages in criminal activity while knowing that his or her parental rights are in jeopardy."); *In re S.B.*, 207 S.W.3d 877, 885 (Tex. App.—Fort Worth 2006, no pet.) (affirming termination under subsection (E) based on officer's testimony that Father killed Mother while children were in the same home and evidence that Father used drugs and had abused Mother "on more than one occasion"); *but see In re E.M.N.*, 221 S.W.3d 815, 824 (Tex. App.—Fort Worth 2007, no pet.) ("[U]nder subsection (E), . . . murder of one parent by the other has long been considered a ground for termination." (collecting cases)).

We overrule Father's arguments that the trial court lacked clear and convincing evidence to support termination under statutory-predicate grounds (D) and (E).

## CONCLUSION

For the above reasons, we affirm the trial court's order of termination.

_____

Rosa Lopez Theofanis, Justice

Before Justices Baker, Smith, and Theofanis
  Concurring Opinion by Justice Baker

Affirmed

Filed:  November 22, 2024

11